IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| AEROGROUP INTERNATIONAL, INC., *et al.*, | ) Case No. 17-11962 (KJC) |
| Debtors.[1] | ) Jointly Administered |
| | ) Re: Dkt. Nos. 532, 541, 542 |
| | ) Hearing Date: 2/14/18 at 10:00 a.m. |
| | Objections Due: 2/8/18 (as agreed) and 2/12/18 |

**OBJECTION OF MOVEON COMPONENTES E CALCADO TO THE
(I) CONTRACT REJECTION MOTIONS AND (II) EMERGENCY SALE MOTION**

Moveon Componentes e Calçado, S.A. ("Moveon SA"), on its own behalf and as agent for Tata International Limited ("Tata") and certain of its affiliates (collectively, "Moveon"), interposes this objection and reservation of rights (this "Objection") to the (I) *Second Omnibus Motion of the Debtors for Entry of an Order Authorizing the Debtors to Reject Executory Contracts And Unexpired Leases* [D.I. 541] ("Second Rejection Motion"), (II) *Third Omnibus Motion of the Debtors for Entry of an Order Authorizing the Debtors to Reject Executory Contracts And Unexpired Leases* [D.I. 542] (the "Third Rejection Motion," and together with the Second Rejection Motion, the "Contract Rejection Motions") and (III) *Motion for Entry of an Order (A) Approving the Sale of the Debtors' Assets, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Certain Related Relief* [D.I. 532] (the "Emergency Sale Motion," and together with the Contract Rejection Motions, the "Motions") filed by the above-captioned debtors

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Aerogroup International, Inc. (6119), AGI Holdco, Inc. (7087), Aerogroup International LLC (4658), Aerogroup International Holdings LLC (4312), Aerogroup Retail Holdings, Inc. (4650), and Aerogroup Gift Card Company, Inc. (7551). The mailing address for the Debtors, solely for purposes of notices and communications, is: 201 Meadow Road, Edison, New Jersey 08817.

1

and debtors in possession (collectively, the "Debtors"). In support of this Objection, Moveon states as follows:

## I. PRELIMINARY STATEMENT[2]

1. By the Motions, the Debtors seek authority to reject the Moveon Agreements and to sell certain intellectual property assets "free and clear" of Moveon's rights under an exclusive license throughout India, Europe and for "first cost" and co-branded sales in South Africa to use the Licensed Marks in connection with the promotion, marketing, advertising distribution, manufacturing and sale of women's shoes, handbags and accessories, through February 28, 2042. Moveon objects to the relief sought by the Motions because (i) Moveon has continuing license rights, notwithstanding any approved rejection; (ii) the Debtors cannot sell the Licensed Marks free and clear of those continuing rights; and (iii) the Debtors cannot sell rights to a purchaser that already have been bargained away. Moveon's rights to use the Licensed Marks under the Moveon Agreements continue after any rejection; those rights do not somehow vaporize just because the Debtors filed bankruptcy and now are forced to liquidate their remaining assets and business. Any approved sale of the Licensed Marks therefore must be subject to Moveon's continuing rights under the Moveon Agreements. Moreover, to the extent the Debtors are seeking to deprive Moveon of its rights under the Moveon Agreements based on arguments and allegations that Moveon breached the Moveon Agreements or that the Moveon Agreements have somehow been terminated, such relief must be sought through the filing and prosecution of an adversary proceeding.

---

[2] Capitalized terms used but not otherwise defined in this Objection shall have the meanings ascribed such terms in the Motions, as appropriate.

## II.   RELEVANT BACKGROUND

A.   *Chapter 11 Cases*

2.   On September 15, 2017 (the "Petition Date"), Aerogroup International, LLC ("AGI LLC"), Aerogroup International Holding, LLC ("AGI Holding"), AGI Holdco, Inc. ("AGI Holdco") and certain other debtor affiliates filed in this Court voluntary petitions for relief under chapter 11 of title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.*, the "Bankruptcy Code").

3.   On November 20, 2017, AGI Holdco filed its *Amended Schedules of Assets and Liabilities* [DI 275] (the "Holdco Schedules"), which scheduled on Schedule E/F therein, among other things, Moveon SA as an unsecured creditor holding a non-contingent, liquidated and undisputed claim in the amount of $1,758,636.40 (the "Scheduled Claim").  On the same day, AGI LLC filed its *Amended Schedules of Assets and Liabilities* [DI 279] (the "AGI LLC Schedules"), which scheduled on Schedule G therein, among other things, the following executory contracts (collectively, the "Moveon Agreements")[3]:

- *License Agreement* dated 3/1/2012 (Tata as counterparty);

- *Amendment Agreement* dated 5/21/2015 (Tata as counterparty);

- *Letter re Nonexclusive Trademark License* dated 5/12/2016 (the "Trademark Letter"; AGI LLC, Tata, Moveon SA and Green Cross (as defined below) as separate counterparties); and

- *Second Amendment of License Agreement* dated 10/25/2016 (Tata as counterparty).

---

[3] Upon information and belief, the Debtors have copies of the Moveon Agreements, the terms of which are proprietary and confidential.  Copies of the Moveon Agreements are available upon reasonable written request and execution of any required confidentiality agreement.

4. On January 24, 2018, the Debtors filed the Emergency Sale Motion seeking, among other things, an expedited sale or sales of all or substantially all of the Debtors' Assets including the Licensed Marks (as that term is defined below).

5. On January 26, 2018, the Debtors filed the Second Rejection Motion, seeking to, among other things, reject the Trademark Letter listed "on **Exhibit 1** to the Proposed Order, which [is] not subject to assumption and assignment under the proposed Sale," effective as of February 14, 2018. Second Rejection Motion at ¶ 14; *see also* Proposed Order, attached to the Second Rejection Motion as **Exhibit 1** at p. 7. In the Second Rejection Motion, the Debtors reserve the right at their sole discretion to remove Executory Contracts listed on **Exhibit 1** to the Proposed Order. Second Rejection Motion at ¶ 21.

6. On the same day, the Debtors filed the Third Rejection Motion, seeking to, among other things, reject the Moveon Agreements listed "on **Exhibit 1** to the Proposed Order, which are not subject to assumption and assignment under the proposed Sale," effective as of February 14, 2018. Third Rejection Motion at ¶ 14; *see also* Proposed Order, attached to the Third Rejection Motion as **Exhibit 1** at pp. 3, 4. In the Third Rejection Motion, the Debtors reserve the right at their sole discretion to remove Executory Contracts listed on **Exhibit 1** to the Proposed Order. Third Rejection Motion at ¶ 21.

7. On February 2, 2018, the Debtors filed the *Notice of Potential Assumption and Assignment of Contracts and Related Cure Amounts* [D.I. 588], which lists on Schedule 1 thereto, Executory Contracts, including each of the Moveon Agreements, which the Debtors may assume and assign to the Successful Bidder(s).

8. As of the filing of this Objection, the Debtors have not announced any agreement reached with any proposed stalking horse bidder for some or all of the Assets.

B.  *Parties' Relationship*

9.  On or about March 1, 2012, AGI LLC and Tata entered into that certain *License Agreement* (as amended on May 21, 2015 and October 25, 2016, respectively, the "License Agreement"), pursuant to which Tata was granted the rights to market, promote, distribute, manufacture and sell women's shoes, handbags and accessories bearing the Debtors' trademarks (the "Licensed Marks") on an exclusive basis in India, Europe and for "first cost" in South Africa for a thirty (30) year term through February 28, 2042. *See* License Agreement, §§1, 2 (emphasis added).

10. Pursuant to Section 18.1 of the License Agreement, with prior written notice to AGI LLC (but without need for consent), the exclusive license granted to Tata under the License Agreement is assignable or transferrable to one or more of Tata's affiliated entities. *See* License Agreement, Section 18.1. Pursuant to prior written notice to AGI LLC and a *Sub-Licensing Agreement* dated April 1, 2012 (as amended on March 26, 2015), Tata sub-licensed its rights under the License Agreement to Moveon SA.

11. On May 12, 2016, AGI LLC, Tata, Moveon SA and Green Cross Manufacturers Proprietary Limited ("Green Cross") entered into a certain non-exclusive trademark agreement pursuant to which Moveon SA manufactures and supplies exclusively to Green Cross (for sale in South Africa) shoes that are co-branded with the Debtors' and Green Cross' trademarks[4], respectively, "subject to the provisions of the License Agreement." *See* Trademark Letter, Paragraph 2. The referenced "License Agreement" is the License Agreement described above.

12. In addition to the above, prior to the Petition Date: (a) AGI LLC ordered goods from Moveon in the ordinary course of business pursuant to certain purchase orders, invoices and related

---

[4] The "Co-Branded Mark" authorized pursuant to the Trademark Letter combines one of the Licensed Marks with a Green Cross trademark.

protocol sequencing (collectively, the "Purchasing Agreements")[5]; and (b) the Debtors and Moveon (1) shared certain marketing expenses (invoiced by AGI Holdings to Moveon SA, which invoices remain unpaid), (2) agreed to certain commissions (invoiced by non-Debtor AFC Management Limited to Moveon SA; some commissions may not have been invoiced yet, and some commissions have been paid via payment(s) made to AFC Management Limited), (3) agreed to certain surcharges (invoiced by AGI LLC to Moveon, some of which remain unpaid and some of which have been paid via payment(s) made to AGI LLC), and (4) agreed to cost-sharing for technical changes made to website(s) to allow for re-direction of traffic from a U.S. website to a European website.

13.    On November 27, 2017, Moveon SA timely filed three (3) proofs of claim against AGI Holdco, AGI LLC and AGI Holdings LLC, respectively, for Moveon's section 503(b)(9) claims and prepetition general unsecured claims. Those proofs of claim assert priority section 503(b)(9) claims in an aggregate amount of not less than $44,952.00 and non-priority general unsecured claims in an aggregate amount of not less than $1,716,452.08.

14.    Postpetition, the Debtors have ordered 48,507 pairs of shoes from Moveon valued at $866,005.50. Pursuant to the agreement the Debtors reached with vendors to induce postpetition production of goods for the Debtors, Moveon was paid $259,801.65 (30% of $866,005.50) upon the Debtors' placement of orders, but $606,203.85 (the remaining 70% cost of such goods) remains unpaid and outstanding. It is unclear whether the Debtors will pay Moveon the outstanding balance for goods ordered and thereafter produced postpetition.

---

[5] Under the Purchasing Agreements, AGI LLC issued purchase orders to Moveon. Then, Tata's affiliates would fill particular purchase orders and Moveon SA would invoice the Debtors for goods delivered to the Debtors. Certain of those invoices were paid by the Debtors via payments sent to Moveon SA and certain of those invoices remain unpaid. Such unpaid invoices form the basis for the Scheduled Claim ($1,758,636.40).

### III. OBJECTION

#### A. REJECTION OF THE MOVEON AGREEMENTS DOES NOT TERMINATE MOVEON'S RIGHTS TO USE THE LICENSED MARKS

15. In recent cases where debtors have rejected trademark licenses, courts in this District and elsewhere have allowed non-debtor trademark licensees to retain rights under rejected and non-executory license agreements for the duration of the license terms. *See, e.g., In re Exide Techs.*, 607 F.3d 957 (3d Cir. 2010) (licensee retains rights under non-executory license agreement); *Sunbeam Products, Inc. v. Chicago Am. Mfg., LLC*, 686 F.3d 372 (7th Cir. 2012) (debtor licensor's rejection of a trademark license, which rejection constitutes a breach, does not deprive the licensee of its continuing rights to use the licensed marks); *In re Crumbs Bake Shop, Inc.*, 522 B.R. 766 (Bankr. D.N.J. 2014) (finding that a trademark licensee's rights to use licensed marks were preserved despite the sale of the debtor's business free and clear of liens, claims and other encumbrances); *but see*, *Mission Products Holdings, Inc. v. Tempnology, LLC, n/k/a Old Cold LLC* (*In re Tempnology, LLC*), 879 F.3d 389, 65 Bankr.Ct.Dec. 23 (1st Cir. Jan. 12, 2018). Accordingly, after any Court-approved rejection of the Moveon Agreements, Moveon will continue to be entitled to exercise its rights ("<u>Moveon's Continuing Rights</u>") thereunder to an exclusive license throughout India, Europe and for "first cost" and co-branded sales in South Africa to use the Licensed Marks in connection with the promotion, marketing, advertising distribution, manufacturing and sale of women's shoes, handbags and accessories, through and including February 28, 2042. *See* License Agreement, §§ 1, 2; *but see* Trademark Letter § 19 (Trademark Letter term not necessarily coextensive with License Agreement).

16. Bankruptcy Code section 365(a) provides that, subject to court approval, a trustee "may assume or reject any executory contracts or unexpired leases of the debtor." 11 U.S.C. § 365(a). In determining whether to assume or reject an executory contract under section 365(a), the trustee must exercise sound business judgment. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*,

872 F.2d 36 (3d Cir. 1989).[6]  Bankruptcy Code section 365(g) expressly provides that "the rejection of an executory contract or unexpired lease of the debtor **constitutes a breach** of such contract or lease…immediately before the date of the filing of the petition." 11 U.S.C. § 365(g).

17. In 1985, the Fourth Circuit in *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043 (4th Cir. 1985), held that when an intellectual property license is rejected in bankruptcy, the licensee loses the ability to use any licensed copyrights, trademarks, or patents.  Three years after *Lubrizol*, Congress enacted Bankruptcy Code section 365(n) "to make clear that the rights of an intellectual property licensee to use the licensed property cannot be unilaterally cut off as a result of the rejection of the license pursuant to Section 365 in the event of the licensor's bankruptcy." S. Rep. No. 100-505, at 1 (1988), *reprinted in* 1988 U.S.C.C.A.N. 3200.  Congress, however, did not expressly include trademarks within the relevant definition of "intellectual property" protected by section 365(n).  *See* 11 U.S.C. § 101(35A) (definition of "intellectual property").

18. Some bankruptcy courts have inferred from the omission in section 365(n) of express protection for trademark licensees that Congress codified *Lubrizol* with respect to trademark licenses.[7]  But, when enacting section 365(n), Congress explained why it did not include trademark licenses in the protections afforded to licensees of intellectual property such as patents and copyrights:

> [T]he bill does not address the rejection of executory trademark, trade name or service mark licenses by debtor-licensors.  While such rejection is of concern because of the interpretation of section 365 by the *Lubrizol* court and others, *see, e.g., In re Chipwich, Inc.*, 54 Bankr. Rep. 427 (Bankr. S.D.N.Y. 1985), such contracts raise issues beyond the scope of this legislation.  In

---

[6]  Neither the Debtors' exercise of business judgment nor the executory nature of the Moveon Agreements are put at issue by the Contract Rejection Motions, the Emergency Sale Motion, or this Objection.

[7]  *See In re Deel Inc.*, 2011 Bankr. LEXIS 3776 (Bankr. D. Del. 2011) (relying on negative inference); *In re Wash. Mut., Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011); *In re Old Cargo*, 406 B.R. 180, 211 (Bankr. S.D.N.Y. 2009); *Rima UK Ltd. v. Centura Software Corp. (In re Centura Software Corp.)*, 281 B.R. 660, 674-75 (Bankr. N.D.Cal. 2002).

> particular, trademark, trade name and service mark licensing relationships depend to a large extent on control of the quality of the products or services sold by the licensee. Since these matters could not be addressed without more extensive study, it was determined to postpone congressional action in this area and *to allow the development of equitable treatment of this situation by bankruptcy courts*.

S. Rep. No. 100-505, at 5, *reprinted in* 1988 U.S.C.C.A.N. at 3204 (*emphasis added*). "Nor does the bill address or intend any inference to be drawn concerning the treatment of executory contracts which are unrelated to intellectual property." *Id. See also In re Exide Techs.*, 607 F.3d at 967 (Ambro. J., concurring) (concluding that section 365(n) neither codifies nor disapproves *Lubrizol* as applied to trademarks).

19.  Outside of bankruptcy, a licensor's breach does not terminate a licensee's right to use intellectual property. *See Sunbeam Products, Inc. v. Chicago Am. Mfg., LLC*, 686 F.3d 372, 376 (7th Cir. 2012). By classifying rejection as a breach, not a termination, Bankruptcy Code section 365(g) establishes that in bankruptcy, as outside of it, the non-debtor counterparty's contract rights remain in place. *See id.* at 377. They do not somehow "vaporize." *Id.*; *see also* December 28, 2017 Hearing Transcript at p. 53, lines 22-23 (relevant transcript pages are attached hereto as part of **Exhibit A**). The purpose of Bankruptcy Code section 365 is not "to be the functional equivalent of a rescission, rendering void the contract and requiring that the parties be put back in the positions they occupied before the contract was formed." *Sunbeam* at 377. "It merely frees the estate from the obligation to perform," and "has absolutely no effect upon the contract's continued existence." *Id.* (internal citations omitted). "Courts may use § 365 to free a bankrupt trademark licensor from burdensome duties that hinder its reorganization. They should not…use it to let a licensor take back trademark rights it bargained away." *Exide*, 607 F.3d at 967 (Ambro, J., concurring).

20. Accordingly, while rejection of the Moveon Agreements would constitute a breach by the Debtors deemed to have occurred immediately before the Petition Date, Moveon's contractual rights will continue to exist and to be enforceable.

### B. THE LICENSED MARKS CANNOT BE SOLD FREE AND CLEAR OF MOVEON'S RIGHTS UNDER THE MOVEON AGREEMENT

21. Moveon retains the Moveon's Continuing Rights upon any court-approved rejection of the Moveon Agreements. The Debtors bargained away Moveon's Continuing Rights and, therefore, cannot sell the Licensed Marks "free and clear" to a third party in connection with a sale of the Debtors' Assets. The Debtors seek but are not entitled to a "do-over."

22. It cannot be disputed that a debtor may only sell, pursuant to Bankruptcy Code section 363, property of the bankruptcy estate. *See* 11 U.S.C. § 363(b)(1) ("The trustee, after notice and a hearing, may…sell…other than in the ordinary course of business, *property of the estate.*") (emphasis added). Accordingly, before a debtor may sell property, it must first establish that the property is property of the estate and the debtor has the right to sell it. *See In re Whitehall Jewelers*, No. 08-11261 (KG), 2008 WL 2951974, at *4-5 (Bankr. D. Del. July 28, 2008).

23. Under Bankruptcy Code section 541(a), upon commencement of a case, the debtor's estate consists of "all legal or equitable interests of debtor in property," 11 U.S.C. § 541(a). As Congress made clear in the text of section 541, that section "is not intended to expand the debtor's rights against others more than they exist at the commencement of the case." H.R. Rep. No. 95-595, 95th Cong., 1st Sess. at 367 (1977). It is the debtor's burden to establish that property it seeks to sell is property of the estate. *See Darby v. Zimmerman (In re Popp)*, 323 B.R. 260, 266 (B.A.P. 9th Cir. 2005) ("Section 363(b) as interpreted by *Rodeo*, requires that the estate demonstrate that the property it proposes to sell is "property of the estate.").

24.     Here, Moveon's Continuing Rights belong to Moveon – *not the Debtors*. The Debtors already bargained them away. Accordingly, if the Emergency Sale Motion seeks to sell those same rights to the Successful Bidder(s), the Emergency Sale Motion must be denied. Any sale of the Licensed Marks must be subject to the existing and continuing rights of Moveon under the Moveon Agreements, even assuming the Court has entered an order approving a rejection of the Moveon Agreements. *See* **Exhibit A**, December 28, 2017 Hearing Transcript at p. 55, lines 16-20. Those rights have been in place in favor of Moveon for almost six years and counting.

25.     Moreover, if the Debtors are seeking to deprive Moveon of its continuing property rights under the Moveon Agreements on the grounds that Moveon is in breach of the Moveon Agreements or that the Moveon Agreements somehow have been terminated, the Emergency Sale Motion must be denied for the additional reason that such relief may only be sought and obtained pursuant to a properly filed and prosecuted adversary proceeding.[8] Fed. R. Bankr. P. 7001(2), (9).

26.     Bankruptcy Rule 7001(2) is clear that an adversary proceeding is required to "determine the validity, priority, or extent of a lien or other interest in property." Fed. R. Bankr. P. 7001(2). As Judge Gross has ruled, under Bankruptcy Rule 7001(2) and citing Third Circuit authority, a debtor is not allowed to seek to invalidate a creditor's interest in property by motion. *Whitehall Jewelers*, 2008 WL 2951974, at *6 (ruling that Bankruptcy Rule 7001(2) requires a debtor to file an adversary proceeding if it desires to invalidate a creditor's interest in property) (*citing SLW Capital, LLC v. Mansaray-Ruffin,* 530 F.3d 230, 237 (3d Cir. 2008)).

---

[8] Moveon reserves all of its rights, claims, defenses, arguments, and objections to any attempt to eliminate its rights under the Moveon Agreements.

27.     Thus, the Emergency Sale Motion must also be denied to the extent it improperly seeks to invalidate Moveon's rights under the Moveon Agreements or sell the Licensed Marks free and clear of Moveon's continuing property rights.

28.     Alternatively, if the Court finds the Debtors can sell the Licensed Marks free and clear of Moveon's rights therein (which it should not do, as explained above), the Court should condition any such sale on the provision of adequate protection in favor of Moveon.  *See* 11 U.S.C. §§ 361, 363(e).

29.     Bankruptcy Code section 363(e) provides, in pertinent part, that "at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court…shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. 363(e).  Under the Moveon Agreements, Moveon has Moveon's Continuing Rights.  If the Court were to allow the sale of the Licensed Marks free and clear of Moveon's Continuing Rights (notwithstanding that the Debtors already bargained away those rights), the Court should condition such sale upon the provision of sufficient adequate protection to Moveon to compensate it for the loss of valuable rights and interests in the Licensed Marks.

30.     Moveon reserves the right to amend, modify or supplement this Objection (a) in response to any additional filings made in respect of the Motions or (b) prior to, at, or following any hearing held on the relief requested by the Motions.

## IV.     CONCLUSION

31.     For the foregoing reasons, Moveon objects to the Motions and respectfully requests that the Court deny entry of any order approving the Motions that is not consistent with the above and grant such additional relief as the Court deems proper, just and necessary.

Dated: February 8, 2018

**BLANK ROME LLP**

*/s/ Stanley B. Tarr*
Michael D. DeBaecke (No. 3186)
Stanley B. Tarr (No. 5535)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Telephone:     (302) 425-6400
Facsimile:     (302) 425-6464
E-mail:     Tarr@BlankRome.com
            DeBaecke@BlankRome.com

*Counsel to Moveon Componentes e Calçado, S.A.*