IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AEROGROUP INTERNATIONAL, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-11962 (KJC)<br><br>Jointly Administered<br><br>Sale Objection Deadline: February 12, 2018<br>Sale Hearing: February 14, 2018<br><br>Related to Docket Nos. 532, 566 |

**OBJECTION OF THE CHUBB COMPANIES TO THE DEBTORS' PROPOSED SALE OF ASSETS**

Federal Insurance Company, Executive Risk Specialty Insurance Company, Great Northern Insurance Company, Chubb Insurance Company of New Jersey, ACE American Insurance Company, Westchester Fire Insurance Company and Insurance Company of North America (and together with each of their affiliates and successors, the "Chubb Companies"), by and through their undersigned counsel, hereby file this objection (the "Objection") to the proposed sale of assets, as described further in the Debtors' Motion for Entry of (I) An Order (A) Approving Bid Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Approving Related Contract Assumption and Assignment Procedures, (C) Authorizing the Debtors to Enter Into Stalking Horse Agreements and Approving Certain Bid Protections, Subject to a Further Hearing, (D) Scheduling a Sale Hearing, and (E) Granting Certain Related Relief; and (II) An Order (A) Approving the Sale of the Debtors' Assets, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Certain Related Relief

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Aerogroup International, Inc. (6119), AGI Holdco, Inc. (7087), Aerogroup International LLC (4658), Aerogroup International Holdings LLC (4312), Aerogroup Retail Holdings, Inc. (4650), and Aerogroup Gift Card Company, Inc. (7551). The mailing address for the Debtors, solely for purposes of notices and communications, is: 201 Meadow Road, Edison, New Jersey 08817.

DM3\5042343.2

[Docket No. 532] (the "Motion") and in support of the Objection, the Chubb Companies respectfully state as follows:

## BACKGROUND

### A. The Bankruptcy Case

1. On September 15, 2017 (the "Petition Date"), Aerogroup International, Inc. and certain of its affiliates (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

2. On January 24, 2018, the Debtors filed the Motion.[2]

3. Pursuant to the Motion, the Debtors seek approval of a process by which the Debtors may conduct an Auction and enter into a Sale(s) with Successful Bidder(s), Backup Bidder(s) or Stalking Horse Bidder(s) for some or all of the Debtors' Assets.

4. The Debtors have not supplied any information in connection with the Motion or Bidding Procedures that would allow an insurer, such as the Chubb Companies, to determine whether any coverage provided to the Debtors may be included as a part of any such Sale.

5. On January 30, 2018, the Chubb Companies filed their *Reservation of Rights of the Chubb Companies with Respect to the Debtors' Proposed Sale of Assets* [Docket No. 554] (the "Reservation of Rights"), reserving their rights to object to the Motion, any proposed Sale, or any agreement or order related thereto.

6. Thereafter, on January 31, 2018, the Court entered an order approving the Motion [Docket No. 566].

---

[2] All capitalized terms used herein but not defined shall have the meanings ascribed to them in the Motion and Bidding Procedures.

DM3\5042343.2

7.      On February 2, 2018, the Debtors filed their *Notice of Potential Assumption and Assignment of Contracts and Related Cure Amounts* [Docket No. 588] (the "Notice") whereon the Debtors list certain of the Policies (as defined herein) issued by the Chubb Companies to the Debtors as **potentially** subject to assumption and assignment as a result of the Sale; however, the Debtors have not listed each of the Insurance Programs in their entirety.

8.      Further, as of the time of this filing, the Debtors have yet to designate a Stalking Horse Bidder, and have not provided the Chubb Companies with adequate assurance information requested by the Chubb Companies.

9.      Accordingly, the Chubb Companies cannot determine with certainty how the Debtors propose to treat the Insurance Programs (as defined below) in connection with any proposed Sale.

**B.      The Insurance Programs**

10.     Prior to the Petition Date, the Chubb Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Policies") to one or more of the Debtors, as named insureds.

11.     Pursuant to certain Policies (together with any agreements related thereto, the "ACE Insurance Program"), ACE American Insurance Company, Westchester Fire Insurance Company and Insurance Company of North America, provide, *inter alia*, privacy protection, fiduciary liability, marine cargo and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit

premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the ACE Insurance Program (the "ACE Program Obligations").

12. Pursuant to other Policies (together with any agreements related thereto, the "Chubb Insurance Program", and collectively with the ACE Insurance Program, the "Insurance Programs"),[3] Federal Insurance Company, Executive Risk Specialty Insurance Company, Great Northern Insurance Company and Chubb Insurance Company of New Jersey provide, *inter alia*, blanket, property, automobile, crime, directors and officers, export, Worldnet, general liability, umbrella, workers' compensation and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Chubb Insurance Program (the "Chubb Program Obligations," and collectively with the ACE Program Obligations, the "Obligations").

13. The Debtors' Obligations are payable over an extended period of time and are subject to future audits and adjustments.

## OBJECTION

14. The Chubb Companies file this Objection to the proposed Sale on the basis that (A) the Chubb Companies cannot determine how the Debtors propose to treat the Insurance Programs in connection with the proposed Sale; (B) each of the Insurance Programs must be

---

[3] The descriptions of the Insurance Programs set forth herein are not intended to, and shall not be deemed to, amend, modify or waive any of the terms or conditions of the Insurance Programs. Reference is made to the Insurance Programs for a complete description of their terms and conditions.

DM3\5042343.2

assumed and assigned, if at all, as a whole; (C) to the extent that the Debtors seek to assume and assign the Insurance Programs, the Insurance Programs cannot be assigned without the consent of the Chubb Companies, which consent has not been sought or given; and (D) the cure amount must be evaluated at the time of assumption.

### A. The Chubb Companies Cannot Determine How The Debtors Propose To Treat The Insurance Programs.

15. The Debtors have yet to enter into any asset purchase agreements, or designate a Stalking Horse Bidder in connection with any proposed Sale.

16. Accordingly, it is uncertain if the Debtors propose that any of the Policies (or any agreements related thereto) will be transferred to a Stalking Horse Bidder or any Successful Bidder(s) in connection with any proposed Sale.

17. Indeed, pursuant to the Notice, the Debtors only list certain of the Policies that "may" be assumed and assigned in connection with the proposed Sale.

18. Based on this ambiguity, the Chubb Companies cannot determine with any certainty how the Debtors propose to treat the Insurance Programs in connection with the proposed Sale.

### B. Each Of The Insurance Programs And The Obligations Thereunder Are Indivisible.

19. It is well-established that a party cannot receive the benefits of a contract without being liable for the obligations thereunder. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985) ("Thus, the often-repeated statement that the debtor must accept the contract as a whole means only that the debtor cannot choose to accept the benefits of the contract and reject its burdens to the detriment of the other party to the agreement."); *see also In re Univ. Med. Ctr.*, 973 F.2d 1065, 1075 (3d Cir. 1992), *superseded by statute on other grounds*;

*Lightfoot v. Borkon (In re Lightfoot)*, 399 B.R. 141, 149 (Bankr. E.D. Pa. 2008) (stating "[a]ssumption of the executory contract requires the debtor to accept its burdens as well as permitting the debtor to profit from its benefits"); *Chrysler Corp. v. Monroeville Dodge (In re Monroeville Dodge)*, 166 B.R. 264, 267 (Bankr. W.D. Pa. 1994) (same); *In re Metro Transp. Co.*, 87 B.R. 338, 342 (Bankr. E.D. Pa. 1982) (stating "assumption or rejection of an executory contrary requires an all-or-nothing commitment going forward, and that hence a debtor cannot assume part of an executory contract in the future while rejecting another part"); *In re Morande Enters.*, 335 B.R. 188, 192 (Bankr. M.D. Fla. 2005) (stating that the "law is clear that an executory contract may not be assumed in part and rejected in part") (citation omitted); *In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 304 (Bankr. S.D.N.Y. 1983) (stating "[i]t is settled law that a trustee or a debtor in possession 'takes the contracts of the debtor subject to their terms and conditions. Contracts adopted by him are assumed *cum onere*'") (citation omitted).

20. Accordingly, any Successful Bidder cannot receive the benefits of the Insurance Programs without remaining liable for the obligations thereunder.

21. Moreover, the Insurance Programs, which are integrated insurance programs, must be read, interpreted and enforced together. *See Physiotherapy Holdings*, No. 14-693, 2015 U.S. Dist. LEXIS 90367, at *17-18, 538 B.R. 225 (D. Del., July 13, 2015) (finding that separately drafted agreements dated at different times but relating to the same subject constitute one cohesive agreement); *Dunkin' Donuts Franchising LLC v. CDDC Acquisition Co. LLC (In re FPSDA I, LLC)*, 470 B.R. 257, 269 (E.D.N.Y. 2012) (holding that "two agreements [were] so interrelated, [that] they form[ed] a single overarching executory contract"); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating "two contracts which are essentially inseparable can be, and

should be, viewed as a single, indivisible agreement between the parties"); *In re Aneco Elec. Constr.*, 326 B.R. at 202.

22. Accordingly, any assumption of the Insurance Programs and the Obligations thereunder must be in its entirety.

### C. The Insurance Programs Cannot Be Assigned Without The Prior Written Consent Of The Chubb Companies, Which Has Not Been Given.

23. To the extent that the Debtors seek to assign the Insurance Programs, such assignment cannot occur without the express written consent of the Chubb Companies.

24. Pursuant to 11 U.S.C. § 365(c), a debtor may not assume or assign an executory contract if applicable law excuses the counterparty from accepting performance from or rendering performance to an entity other than the debtor and such party does not consent to the assumption or assignment. 11 U.S.C. § 365(c)(1)(A) and (B).

25. Applicable non-bankruptcy law does, in fact, prohibit the assignment of insurance policies without the insurer's consent. *See, e.g., Allied Corp. v. Frola*, No. 87-462, 1992 U.S. Dist. LEXIS 15778 (D.N.J. Oct. 6, 1992) (holding that insurance policies are not assignable without the consent of the insurers); *Touchet v. Guidry*, 550 So. 2d 308, 313 (La. App. 1989) (holding that an insurance policy is a personal contract between the insurer and the named insured; and that, ". . . coverage terminates when the contract is assigned or transferred without the consent, permission, and approval of both contracting parties") (citations omitted); *Shadid v. Am. Druggist Fire Ins. Co.*, 386 P.2d 311 (Okla. 1963) (noting the importance of an insurer's consent to an assignment of an insurance policy, and holding that the policy does not pass to the purchaser simply by a sale of the insured property).[4]

---

[4] Some courts have found that insurance policies may be assigned to a trust created under § 524(a) pursuant to a plan under § 1123 without the consent of the insurer. *See, e.g., In re Federal-Mogul Global*, 684 F.3d 355, 382 (3d Cir. 2012) (holding that anti-assignment provisions in insurance policies were preempted by § 1123(a)(5)(B)

26. Similarly, insurers cannot be compelled to provide insurance coverage to any entity that is not a party to the insurance contract. *See Atwood v. Progressive Ins. Co.*, No. 950051089S, 1997 Conn. Super. LEXIS 2450, at *18 (Conn. Super. Ct. Sept. 3, 1997) (stating that "[i]nsurers should not, for example, be forced to assume coverage for a risk which at the time a policy was written was not fairly in its and the insured's contemplation"); *King v. Meese*, 43 Cal. 3d 1217, 1222 (Cal. 1987) (noting that "an insurer may refuse to insure based on any permissible classification"); *Cummins v. Nat'l Fire Ins. Co.*, 81 Mo. App. 291, 296 (Mo. Ct. App. 1899) ("An insurance company may well refuse to insure some persons. They, like any other entity, have a right of choice as to who they will contract with and they can no more be forced to a change of the assured than the assured could be forced to accept insurance from some other company (in which he may have no confidence) than the one contracted with."). Therefore, the Insurance Programs cannot be assigned without the prior, written consent of the Chubb Companies.

27. The Chubb Companies have not been provided with any information regarding a Stalking Horse Bidder in order to be able to assess whether it would satisfy the Chubb Companies' credit and underwriting criteria. Accordingly, the Chubb Companies are unable, at this time, to assess whether a Stalking Horse Bidder—let alone any Successful Bidder—would satisfy those criteria.

28. As a condition precedent for any consent that may be given by the Chubb Companies to an assignment of the Insurance Programs, the Debtors and the assignee will be required to execute assumption agreements, in form and substance acceptable to the Chubb

---

[of the Bankruptcy Code] to the extent they prohibit transfer to a § 524(g) trust"); *In re W.R. Grace & Co.*, 475 B.R. 34, 198-99 (D. Del. 2012) (holding that anti-assignment provisions in insurance policies were preempted by § 1123(a)(5)(B) in the context of the establishment of a § 524(g) trust). The present case involves neither an assignment to a trust created pursuant to § 524(a) nor an assignment under a plan.

Companies. As the ultimate proposed assignee is not yet known, this agreement has not yet been negotiated, let alone executed.

29. Therefore, because the Chubb Companies have not consented to any proposed assignment of the Insurance Programs, the Chubb Companies object on this basis.

### D. The Cure Amount Must Be Evaluated At The Time Of Assumption.

30. On the Notice, the Debtors state that there is no cure amount due to the Chubb Companies on account of certain of the Policies that the Debtors designate as potentially subject to assumption and assignment in connection with the proposed Sale.

31. As noted above, in order to assume certain Policies listed on the Notice, the Debtors must assume and assign each of the Insurance Programs in their entirety. Further, as more particularly described in the Insurance Programs, the Debtors are required to pay the Obligations, and therefore, amounts may become due and owing under the Insurance Programs either prior to or after the assumption thereof.

32. The Chubb Companies may also have contingent, unliquidated claims against the Debtors for the Obligations, given the nature of the Insurance Programs and the Obligations. By way of example and not limitation, additional premiums may be payable at audit under the terms of the Insurance Programs, based upon factors as they exist throughout the coverage period.

33. Accordingly, as a condition for the assignment of the Insurance Programs, the assignee must remain liable for all of the Debtors' obligations and liabilities (including the Obligations), whether now existing or hereafter arising, under the Insurance Programs including, without limitation, paying Obligations as they become due.

E. **Reservation of Rights.**

34. The Chubb Companies reserve their rights to assert additional objections to the Motion, any Sale, any purchase agreement or order related thereto, and any attempt by the Debtors to assume and assign some or all of the Insurance Program to the Successful Bidder.

WHEREFORE, the Chubb Companies request that as a condition precedent for the assignment of the Insurance Programs, this Court enter an order: (a) requiring that the Debtors, on or before the closing of the Sale, receive the express written consent of the Chubb Companies to the assignment of the Insurance Programs and satisfy any conditions for such consent; (b) requiring that the assignee be liable for all of the Debtors' Obligations and liabilities, whether now existing or hereafter arising, under the Insurance Programs; (c) providing that any assignment of the Insurance Programs in no way limits, diminishes, or otherwise alters or impairs the Debtors', the assignee's and/or the Chubb Companies' defenses, claims, causes of action, or other rights under applicable non-bankruptcy law with respect to the Insurance Programs; and (d) granting such other relief as is just and proper.

Dated: February 12, 2018

Respectfully submitted,
DUANE MORRIS LLP

By: */s/ Richard W. Riley*
Richard W. Riley, Esq. (DE Bar No. 4052)
Duane Morris LLP
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801
Telephone: 302-657-4928
Fax: 302-657-4901
Email: rwriley@duanemorris.com

-and-

Wendy M. Simkulak, Esquire
Drew S. McGehrin, Esquire
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1000
Email: wmsimkulak@duanemorris.com
Email: dsmcgehrin@duanemorris.com

*Counsel for the Chubb Companies*

DM3\5042343.2