# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| AEROGROUP INTERNATIONAL, INC., et al., | ) Case No. 17-11962 (KJC) |
| | ) |
| Debtors.[1] | ) (Jointly Administered) |
| | ) |
| | ) Re: D.I. 532, 566, 618, 626 |

## ORDER (I) APPROVING SELECTION OF A STALKING HORSE, (II) APPROVING THE BID PROTECTIONS, AND (III) GRANTING RELATED RELIEF

Upon the motion, dated January 24, 2018 (the "Motion"), of Aerogroup International, Inc. and certain of its affiliates, as debtors and debtors in possession in the above-captioned cases (each, a "Debtor" and collectively, the "Debtors"), pursuant to Bankruptcy Code sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking, among other things, entry of (i) an order (the "Bid Procedures Order") (a) approving the bid procedures (the "Bid Procedures") in connection with a sale or sales of all or substantially all of the Debtors' assets (the "Sale"); (b) approving certain notice procedures; (c) approving procedures for the assumption and assignment of certain executory contracts; (d) subject to a further hearing, authorizing the Debtors to enter into stalking horse agreements and approving certain customary bid protections for any stalking horse bidder(s) in connection with a

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Aerogroup International, Inc. (6119), AGI Holdco, Inc. (7087), Aerogroup International LLC (4658), Aerogroup International Holdings LLC (4312), Aerogroup Retail Holdings, Inc. (4650), and Aerogroup Gift Card Company, Inc. (7551). The mailing address for the Debtors, solely for purposes of notices and communications, is: 201 Meadow Road, Edison, New Jersey 08817.

sale transaction; (e) scheduling a hearing to approve the Sale (the "Sale Hearing"); and (f) granting certain related relief; and (ii) an order (a) approving the Sale free and clear of all claims, liens, liabilities, interests and encumbrances, (b) approving the assumption and assignment of certain designated executory contracts, and (c) granting certain related relief; and the Debtors having signed that certain Asset Purchase and Sale Agreement (the "APA")[2] with the purchaser named therein  (the "Stalking Horse Bidder") contemplating the sale of certain of the Debtors' assets (specifically as defined in the APA, the "Purchased Assets") to the Stalking Horse Bidder (the "Sale Transaction");  and the Court having conducted a hearing to consider entry of the Bid Procedures Order on January 30, 2018, at which hearing the Court entertained the Debtors' request to seek, at a future date, bid protections for a stalking horse bidder; and the Court having entered the Bid Procedures Order on January 31, 2018 [Docket No. 566]; and the APA having been filed on the docket for the Chapter 11 Cases on February 13, 2018 [Docket No. 618]; and the Court having conducted a hearing to consider the selection of the Stalking Horse Bidder and entry of this Order on February 14, 2018 (the "Stalking Horse Hearing"); and notice of the selection of the Stalking Horse Bidder and of the Stalking Horse Hearing having been served on all parties on the Debtors' 2002 notice list and all Potential Bidders;

**THE COURT HEREBY FINDS THAT:[3]**

A.    This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and proceedings is proper in this District and this Court under 28 U.S.C.

---

[2] Unless otherwise noted, capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Bid Procedures Order, the Motion, or the APA.

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

§§ 1408 and 1409.

B.    The statutory predicates for the relief requested in the Motion are Bankruptcy Code sections 105, 363, 503 and 507.  Such relief is also warranted pursuant to Bankruptcy Rules 2002, 6004, 6006, 9007 and 9008.

C.    This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

D.    The relief granted herein is in the best interests of the Debtors, their estates and other parties in interest.

E.    The Debtors have articulated good and sufficient business reasons for the Court to (i) approve the Stalking Horse Bidder (ii) approve the payment of the Break-Up Fee and the Expense Reimbursement (collectively, as used herein, the "Bid Protection Payments") to the Stalking Horse Bidder, in an aggregate amount of $450,000, in accordance with the APA, *and as* *modified* *herein* and (iii) approve the requirement that the initial minimum overbid (in the form of cash or credit bid) at the Auction be equal to ~~$1 million~~ $500,000 more than the Purchase Price, including, for the avoidance of doubt, ~~$1 million~~ $500,000 more than any portion of the Purchase Price allocated by the Stalking Horse Bidder to any portion of the Purchased Assets pursuant to Section 5.04 of the APA (the "Minimum Overbid" and together with the Bid Protection Payments, the "Bid Protections").

F.    The Debtors have demonstrated the Bid Protection Payments are actual and necessary costs and expenses of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code, and the Bid Protections are of substantial benefit to the Debtors' estates by inducing the Stalking Horse Bidder's bid, which has established a bid standard or minimum for other bidders for the Purchased Assets, thereby ensuring that during the Auction, if any, the Debtors receive the highest or best bid possible for the Purchased Assets.  The Debtors

have also demonstrated that the Stalking Horse Bidder required Bid Protections as a condition to agreeing to be the Stalking Horse Bidder, such Bid Protections are reasonable, and such Bid Protections are of substantial benefit to the Debtors' estates by inducing the Stalking Horse Bidder's bid.

G.    Due, proper, timely, sufficient, and adequate notice of the hearing on the Motion and the relief requested in the Motion and the relief granted herein has been given in light of the circumstances and the nature of the relief requested and no other or further notice thereof is required.

H.    The Bid Protections (i) in the case of the Bid Protection Payments, *as modified herein* shall be deemed an actual and necessary cost of preserving the Debtors' estates within the meaning of Bankruptcy Code section 503(b), (ii) are of substantial benefit to the Debtors' estates; (iii) are reasonable and appropriate, including in light of the size and nature of the Sale and the efforts expended by the Stalking Horse Bidder and (iv) enable the Debtors to promote a sale of the Purchased Assets with the greatest benefit to the estate.

I.    The Bid Protections were negotiated by the Debtors and the Stalking Horse Bidder in good faith and at arm's-length.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:** *Subject to further order of court*

1.    The Bid Protection Payments for the Stalking Horse Bidder are approved. For the avoidance of doubt, in the event the Successful Bid of the Successful Bidder for the Purchased Assets is a credit bid (in whole or in part), the Bid Protection Payments shall be paid in cash. ✱

2.    The Minimum Overbid for the initial round of bidding at the Auction (in the form of cash or credit bid) shall be equal to *$500,000* ~~$1 million~~ more than the Purchase Price, including, for the avoidance of doubt, *$500,000* ~~$1 million~~ more than any portion of the Purchase Price allocated by the

[BAY:03220199v1]

*Notwithstanding anything to the contrary herein or in the APA, the Bid Protection Payments shall only be paid (i) from the proceeds of a sale of any of the Purchased Assets to a Successful Bidder other than the Stalking Horse Bidder and (ii) if the Stalking Horse Bidder has not terminated the APA prior to the Closing of such sale; provided however if the Stalking Horse Bidder terminates the APA due to a breach by the Debtors, the Stalking Horse Bidder shall still be entitled to the Expense Reimbursement*

Stalking Horse Bidder to any portion of the Purchased Assets pursuant to Section 5.04 of the APA.

3.      Any objections to the relief provided herein that have not been withdrawn, waived, settled, or resolved, and all reservation of rights included in such objections and responses, are overruled on the merits and denied with prejudice. All persons and entities given notice of the Motion and entry of this Order that failed to timely object thereto are deemed to consent to the relief granted herein.

4.      This Court's findings of fact and conclusions of law set forth in the Bid Procedures Order are incorporated herein by reference.

5.      Notwithstanding any procedure set forth in paragraphs 18 or 19 of the Bid Procedures Order, the Stalking Horse Bidder shall be the Stalking Horse Bidder for the Purchased Assets.

6.      Notwithstanding anything in the Bid Procedures Order to the contrary, pursuant to Bankruptcy Code sections 105, 363, 503 and 507, the Bid Protections are hereby approved and the Debtors are hereby authorized and directed to pay the Bid Protection Payments to the Stalking Horse Bidder pursuant to the terms of the APA. The obligations to pay the Bid Protection Payments to the Stalking Horse Bidder (i) shall be entitled to administrative expense claim status under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, (ii) shall be a superpriority administrative claim with priority over all other administrative claims against the Debtors, including the DIP Obligations, the Carve Out[4] and any other obligations owing under the DIP Order, (iii) shall be treated with such priority if any of the Chapter 11 Cases are

---

[4]      Each as defined in the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing and Grant Security Interests and Superpriority Administrative Expense Status with Respect to the DIP Collateral; (II) Granting Adequate Protection to the Prepetition Secured Credit Parties; (III) Modifying the Automatic Stay; (IV) Authorizing the Debtors to Enter into Agreements with Polk 33 Lending, LLC; (V) Authorizing the Use of Cash Collateral, and (VI) Granting Related Relief* (the "DIP Order")

converted to cases under chapter 7 of the Bankruptcy Code; and (iv) shall survive termination of the APA.

7. Notwithstanding anything to the contrary in the Bid Procedures Order: (i) the Stalking Horse Bidder's bid as set forth in the APA is a Qualified Bid, (ii) in evaluating and valuing all Qualified Bids and Overbids, the Debtors shall give effect to the Break-Up Fee and Expense Reimbursement, (iii) at the auction, if the Debtors determine that another bidder has provided a Qualified Bid that is "higher and better" than the Staking Horse Bidder's bid (including as may be improved upon at any time during the Auction), the Debtors shall provide a copy of such "higher and better" bid to the Stalking Horse Bidder upon such determination so that the Stalking Horse Bidder will have the opportunity to improve or increase its bid; and (iv) if, after the date of this Order, the Debtors furnish to any bidder any material information related to the Debtors not therefore given to the Stalking Horse Bidder, then the Debtors shall immediately notify the Stalking Horse Bidder of such information and place it in the designated data room for the Stalking Horse Bidder.

8. The Debtors are hereby authorized and empowered to take such actions as may be reasonably necessary to implement and effect the terms and requirements established by this Order.

9. This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

10. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7052, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

11.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Wilmington, Delaware
Date: February 14, 2018

THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE