## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AEROGROUP INTERNATIONAL, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 17-11962 (KJC)<br>(Jointly Administered)<br><br>**Re: D.I. 566, 618, 622,** |

## <u>NOTICE OF FILING PROPOSED SALE ORDER</u>

PLEASE TAKE NOTICE that on January 31, 2018, the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") entered the *Order (A) Approving Bid Procedures for the Sale of Substantially all of the Debtors' Assets, (B) Approving Procedures for the Assumption and Assignment of Executory Contracts or Unexpired Leases in Connection with the Sale, (C) Authorizing the Debtors to Enter Into Stalking Horse Agreements and Approving Certain Bid Protections, Subject to a Further Hearing, (D) Scheduling a Sale Hearing, and (E) Granting Certain Related Relief* [D.I. 566] (the "<u>Bid Procedures Order</u>")[2] that, among other things, approved procedures for the solicitation and consideration of competing offers for the sale of substantially all of the Debtors' assets.

PLEASE TAKE FURTHER NOTICE that the Auction was held on February 15, 2018, commencing at 10:00 a.m. (ET) and continuing until February 16, 2018 at the offices of Ropes & Gray LLP, 1211 Avenue of the Americas, New York, New York 10036. At the Auction, Alden Global Capital, LLC, was designated as the Successful Bidder.

PLEASE TAKE FURTHER NOTICE that a hearing will be held to approve the sale of the Debtors' assets to the Successful Bidder before the Honorable Kevin J. Carey, United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801, 6th Floor, Courtroom 1, on **February 16, 2018 at 3:00 p.m. (ET)**.

PLEASE TAKE FURTHER NOTICE that attached hereto as <u>Exhibit A</u> is a proposed form of order approving the sale (the "<u>Proposed Sale Order</u>").

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Aerogroup International, Inc. (6119), AGI Holdco, Inc. (7087), Aerogroup International LLC (4658), Aerogroup International Holdings LLC (4312), Aerogroup Retail Holdings, Inc. (4650), and Aerogroup Gift Card Company, Inc. (7551). The mailing address for the Debtors, solely for purposes of notices and communications, is: 201 Meadow Road, Edison, New Jersey 08817.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bid Procedures Order.

Dated: February 16, 2018
       Wilmington, Delaware

BAYARD, P.A.

*/s/  Erin R. Fay*

Scott D.  Cousins (No. 3079)
Erin R. Fay (No. 5268)
Gregory J.  Flasser (No. 6154)
600 N. King Street, Suite 400
Wilmington, Delaware  19801
Phone: (302) 655-5000
Email: scousins@bayardlaw.com
       efay@bayardlaw.com
       gflasser@bayardlaw.com

-and-

ROPES & GRAY LLP
Gregg M. Galardi
Mark R. Somerstein
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone:  (212) 596-9000
Facsimile:    (212) 596-9090
gregg.galardi@ropesgray.com
mark.somerstein@ropesgray.com

*Co-Counsel for the Debtors*

## Exhibit A

**Form of Proposed Sale Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| AEROGROUP INTERNATIONAL, INC., et al., | ) Case No. 17-11962 (KJC) |
| | ) |
| Debtors.[1] | ) (Jointly Administered) |
| | ) |
| | ) **Re: D.I. 532, 566** |

**ORDER (I) AUTHORIZING THE SALE OF CERTAIN ASSETS OF THE
DEBTORS FREE AND CLEAR OF ALL LIENS, CLAIMS, LIABILITIES, RIGHTS,
INTERESTS AND ENCUMBRANCES AND OTHER INTERESTS, (II) AUTHORIZING
THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES IN CONNECTION THEREWITH,
AND (III) GRANTING RELATED RELIEF**

Upon the motion, dated January 24, 2018 (the "Motion"),[2] of Aerogroup International,

Inc. and certain of its affiliates, as debtors and debtors in possession in the above-captioned cases

(each, a "Debtor" and collectively, the "Debtors"), pursuant to Bankruptcy Code sections 105(a),

363, 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code") and Rules

2002, 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice

and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local

Rules"), seeking entry of (i) an order (the "Bid Procedures Order") (a) approving the bid

procedures (the "Bid Procedures")  in connection with a sale or sales of all or substantially all of

the Debtors' assets (collectively, one or more such sales, the "Sale"); (b) approving certain notice

procedures; (c) approving procedures for the assumption and assignment of certain executory

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax
identification number, are as follows: Aerogroup International, Inc. (6119), AGI Holdco, Inc. (7087), Aerogroup
International LLC (4658), Aerogroup International Holdings LLC (4312), Aerogroup Retail Holdings, Inc. (4650),
and Aerogroup Gift Card Company, Inc. (7551). The mailing address for the Debtors, solely for purposes of notices
and communications, is: 201 Meadow Road, Edison, New Jersey 08817.

contracts; (d) subject to a further hearing, authorizing the Debtors to enter into stalking horse agreements and approving certain customary bid protections for any stalking horse bidder(s) in connection with a sale transaction; (e) scheduling a hearing to approve the Sale (the "Sale Hearing"); and (f) granting certain related relief; and (ii) an order (a) approving the Sale free and clear of all claims, liens, liabilities, interests and encumbrances, (b) approving the assumption and assignment of certain designated executory contracts, and (c) granting certain related relief; and the Debtors having signed that certain Asset Purchase and Sale Agreement (as may be amended from time to time in accordance with the terms thereof and this Order, the "APA") contemplating the sale of certain of the Debtors' assets (specifically as defined in the APA, the "Purchased Assets") to the purchaser named in the APA (the "Purchaser") free and clear of any Claims, as defined herein (the "Sale Transaction"); and the Court having entered the Bid Procedures Order on January 31, 2018 [Docket No. 566]; and the Court having entered an order (the "Stalking Horse Order") approving the Debtors' entry into a Stalking Horse Agreement with the Purchaser serving as the Stalking Horse Bidder and approving the Bid Protections (as defined in the Stalking Horse Order) on February 14, 2018; and the Auction having been held on February 15-16, 2018; and the Sale Hearing having been held on February 16, 2018; and the Court having reviewed and considered the relief sought in the Motion, the APA, all objections to the Motion, and the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and all parties in interest having been heard or having had the opportunity to be heard regarding the Sale Transaction and the relief requested in this Order; and due and sufficient notice of the Sale Hearing and the relief sought therein having been given under the particular circumstances of these chapter 11 cases and in accordance with the Bid Procedures Order; and it appearing that no other or further notice need be provided; and it appearing that the relief

requested in the Motion is in the best interests of the Debtors, their estates, their creditors and all

other parties in interest; and it appearing that the Court has jurisdiction over this matter; and it

further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing

establish just cause for the relief granted herein; and after due deliberation thereon,

### THE COURT HEREBY FINDS THAT:[3]

### Jurisdiction and Venue

A.      This Court has jurisdiction to hear and determine the Motion pursuant to 28

U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

Venue of these cases and proceedings is proper in this District and this Court under 28 U.S.C.

§§ 1408 and 1409.

### Statutory Predicates

B.      The statutory predicates for the relief requested in the Motion are Bankruptcy

Code sections 105, 363, and 365.  Such relief is also warranted pursuant to Bankruptcy Rules

2002, 6004, 6006, 9007, 9008.

### Final Order

C.      This Order constitutes a final and appealable order within the meaning of 28

U.S.C. § 158(a).

### Notice of the APA, Sale Transaction, Sale Hearing and Bid Procedures Order

D.      On September 15, 2017 (the "Petition Date"), the Debtors commenced these

chapter 11 cases (the "Chapter 11 Cases") by filing a voluntary petition for relief under chapter

11 of the Bankruptcy Code.  Since the Petition Date, the Debtors have continued to operate and

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

manage their businesses as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

E.      As evidenced by the affidavits of service previously filed with this Court, and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate and sufficient notice of the Motion, the Bid Procedures Order, the Stalking Horse Order, the Auction, the Sale Hearing, the APA and the Sale Transaction has been provided in accordance with Bankruptcy Code sections 102(1) and 363, Bankruptcy Rules 2002 and 9014, and Local Rules 2002-1 and 6004-1.  The Debtors have complied with all obligations to provide notice of the Motion, the Bid Procedures Order, the Stalking Horse Order, the Auction, the Sale Hearing, the APA and the Sale Transaction as required by the Bid Procedures Order.  The aforementioned notices are good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Bid Procedures Order, the Stalking Horse Order, the Auction, the Sale Hearing, the APA or the Sale Transaction is or shall be required.

F.      A reasonable opportunity to object or be heard regarding the relief requested in the Motion was afforded to all parties in interest.

## Compliance with the Bid Procedures Order

G.      As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel at the Sale Hearing, the Debtors have complied in all material respects with the Bid Procedures Order.  The Debtors and their professionals have adequately and appropriately marketed the Purchased Assets in compliance with the Bid Procedures and the Bid Procedures Order, and accordance with the Debtors' fiduciary duties.  Based upon the record of these proceedings, creditors, other parties in interest and prospective Purchasers were afforded a reasonable and fair opportunity to bid for the Purchased Assets.

H.      The Bid Procedures were substantively and procedurally fair to all parties and all

potential bidders and afforded notice and a full, fair and reasonable opportunity for any person to

make a higher or otherwise better offer to purchase the Purchased Assets.    The Debtors

conducted the sale process without collusion and in accordance with the Bid Procedures.

I.      The Bid Procedures Order and the Stalking Horse Order are incorporated herein

by reference.

J.      The Purchaser is the Successful Bidder, and the APA is the Successful Bid, for

the Purchased Assets in accordance with the Bid Procedures Order.    The Purchaser has complied

in all respects with the Bid Procedures Order and all other applicable orders of this Court in

negotiating and entering into the APA, and the Sale Transaction and the APA likewise comply

with the Bid Procedures Order and all other applicable orders of this Court.

**Business Judgment**

K.      The APA, including the form and total consideration to be realized by the Debtors

under the APA, (i) constitutes the highest and best offer received by the Debtors for the

Purchased Assets; (ii) is fair and reasonable; and (iii) is in the best interests of the Debtors, their

estates, their creditors and all other parties in interest.

L.      The Debtors' determination that the consideration provided by the Purchaser

under the APA constitutes the highest and best offer for the Purchased Assets constitutes a valid

and sound exercise of the Debtors' business judgment.

M.      Consistent with their fiduciary duties, the Debtors have demonstrated good,

sufficient and sound business reasons and justifications for entering into the Sale Transaction and

the performance of their obligations under the APA, including, but not limited to, the fact that (i)

the consideration provided by the Purchaser under the APA will provide a greater recovery for

5

the Debtors' estates than would be provided by any other available alternative, including a separate liquidation of the Purchased Assets; and (ii) unless the Sale Transaction is concluded expeditiously as provided for in the Motion and pursuant to the APA, recoveries of creditors will be diminished.

<strong><u>Corporate Authority</u></strong>

N.      Subject to entry of this Order, each Debtor (i) has full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, (ii) has all of the necessary corporate power and authority to consummate the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, (iii) has taken all corporate action necessary to authorize and approve the APA and the consummation by the Debtors of the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, and (iv) subject to entry of this Order, needs no consents or approvals, other than those expressly set forth in the APA or this Order, to consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts.

<strong><u>Good Faith</u></strong>

O.      The sales process engaged in by the Debtors and the Purchaser, including, without limitation, the Auction, which was conducted in accordance with the Bid Procedures and the Bid Procedures Order, and the negotiation of the APA, was at arm's length, non-collusive, in good faith, and substantively and procedurally fair to all parties in interest.  Neither the Debtors nor the Purchaser has engaged in any conduct that would cause or permit the APA or the Sale

Transaction to be avoided, or costs or damages to be imposed, under Bankruptcy Code section 363(n).

P.      The Debtors and the Purchaser have complied, in good faith, in all respects with the Bid Procedures Order and the Bid Procedures.  The Debtors and their management, board of directors, board of managers (or comparable governing authority), employees, agents, and representatives, and the Purchaser and its employees, agents, advisors and representatives, each actively participated in the bidding process and in the Auction, and each acted in good faith.

Q.      The Purchaser is a good faith buyer within the meaning of Bankruptcy Code section 363(m), and is therefore entitled to the full protection of that provision in respect of the Sale Transaction, each term of the APA (and any ancillary documents executed in connection therewith) and each term of this Order, and otherwise has proceeded in good faith in all respects in connection with this proceeding.  None of the Debtors or the Purchaser has engaged in any conduct that would prevent the application of Bankruptcy Code section 363(m).  The Debtors were free to deal with any other party interested in buying or selling some or all of the Purchased Assets on behalf of the Debtors' estates. The protections afforded by Bankruptcy Code section 363(m) are integral to the Sale Transaction and the Purchaser would not consummate the Sale Transaction without such protections.

R.      The form and total consideration to be realized by the Debtors under the APA constitutes fair value, fair, full and adequate consideration, reasonably equivalent value and reasonable market value for the Purchased Assets.

S.      Neither the Purchaser nor any of its affiliates, officers, directors, managers, shareholders, members or any of their respective successors or assigns is an "insider" of any of the Debtors, as that term is defined under Bankruptcy Code section 101(31).  No common

7

identity of directors, managers, controlling shareholders, or members exists between the Debtors and the Purchaser.

## No Fraudulent Transfer

T.      The consideration provided by the Purchaser for the Purchased Assets pursuant to the APA (i) is fair and reasonable, (ii) is the highest and best offer for the Purchased Assets, (iii) will provide a greater recovery for the Debtors' creditors and estates than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, and each state, territory, possession and the District of Columbia.

U.      The APA was not entered into, and none of the Debtors or the Purchaser has entered into the APA or proposes to consummate the Sale Transaction, for the purpose of (i) escaping liability for any of the Debtors' debts or (ii) hindering, delaying or defrauding the Debtors' present or future creditors, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

## Free and Clear

V.      The transfer of the Purchased Assets to the Purchaser will be legal, valid, and effective transfers of the Purchased Assets, and will vest the Purchaser with all right, title, and interest of the Sellers to the Purchased Assets free and clear of all claims, liens (including, without limitation, any statutory lien on real and personal property and any and all "liens" as that term is defined and used in the Bankruptcy Code, including section 101(37) thereof), liabilities, interests, rights and encumbrances, including, without limitation, the following:  all mortgages,

restrictions (including, without limitation, any restriction on the use, voting rights, transfer rights, claims for receipt of income or other exercise of any attributes of ownership), hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, sublicenses, options, deeds of trust, security interests, equity interests, conditional sale rights or other title retention agreements, pledges, judgments, demands, rights of first refusal, consent rights, offsets, contract rights, rights of setoff, recoupment rights, rights of recovery, reimbursement rights, contribution claims, indemnity rights, exoneration rights, product liability claims, alter-ego claims, environmental rights and claims (including, without limitation, toxic tort claims), labor rights and claims, employment rights and claims, pension rights and claims, tax claims, regulatory violations by any governmental entity, decrees of any court or foreign or domestic governmental entity, charges of any kind or nature, debts arising in any way in connection with any agreements, acts, or failures to act, reclamation claims, obligation claims, demands, guaranties, option rights or claims, rights, contractual or other commitment rights and claims, rights of Licensees or sublicensees (if any) under Bankruptcy Code section 365(n) or any similar statute, rights of tenants and subtenants (if any) under Bankruptcy Code section 365(h) or any similar statute, and all other matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the Chapter 11 Cases (but, for the avoidance of doubt, in each case arising from the ownership of the Purchased Assets or the operation of the Debtors prior to the Closing Date), and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under any theory, law or doctrine of successor or

9

transferee liability or related theories (all of the foregoing, including, without limitation, liens and liabilities, collectively being referred to in this Order as "Claims" and, as used in this Order, the term "Claims" includes, without limitation, any and all "claims" as that term is defined and used in the Bankruptcy Code, including section 101(5) thereof); provided, however, that the transfer of the Purchased Assets to the Purchaser shall not be free and clear of any Licensees' Claims that are the subject of any License Disputes that remain pending and unresolved as of the date hereof (the "License Dispute Exception").  Licensees under the Licenses subject to a License Dispute that remains pending and unresolved as of the date hereof, have continuing rights to use their respective License, which rights shall, to the extent necessary, be determined by a court of competent jurisdiction.

W.    The Sellers may transfer the Purchased Assets free and clear of all Claims (subject to the License Dispute Exception) including, without limitation, rights or claims based on any successor or transferee liability, because, in each case, one or more of the standards set forth in Bankruptcy Code section 363(f)(1)-(5) has been satisfied.  Those (a) holders of Claims and (b) non-Debtor parties to the Assumed Contracts, who did not object or who withdrew their objections to the Motion, are deemed to have consented pursuant to Bankruptcy Code section 363(f)(2).  Those (i) holders of Claims and (ii) non-Debtor parties to the Assumed Contracts who did object, fall within one or more of the other subsections of Bankruptcy Code section 363(f). The Sellers are not permitted to sell the Purchased Assets free and clear of the License Dispute Exception.  Licensees party to any rejected license agreement shall have continuing rights to use the trademarks pursuant to such Licenses, which rights shall, to the extent necessary, be determined in subsequent proceedings in a court of competent jurisdiction.

10

X.      The Debtors have, to the extent necessary, satisfied the requirements of section 363(b)(1) of the Bankruptcy Code.

Y.      The Purchaser would not have entered into the APA and would not consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, (i) if the transfer of the Purchased Assets were not free and clear of all Claims (subject to the License Dispute Exception), or (ii) if the Purchaser would, or in the future could, be liable for any such Claims.  The Purchaser will not consummate the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, unless this Court expressly orders that none of the Purchaser, their respective affiliates, their respective present or contemplated members or shareholders, or the Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Claims (subject to the License Dispute Exception).

Z.      Not transferring the Purchased Assets free and clear of all Claims (subject to the License Dispute Exception) would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Purchased Assets other than pursuant to a transfer that is free and clear of all Claims (subject to the License Dispute Exception) and other interests of any kind or nature whatsoever would be of substantially less benefit to the Debtors' estates.

AA.     Neither the Purchaser nor any of its affiliates are a mere continuation of the Debtors or their estates, there is no continuity or common identity between the Purchaser, any of its affiliates and any of the Debtors, and there is no continuity of enterprise between the Purchaser, any of its affiliates and any of the Debtors.  Neither the Purchaser nor any of its

affiliates are holding themselves out to the public as a continuation of any of the Debtors. Neither the Purchaser nor any of its affiliates are a successor to any of the Debtors or their estates, and none of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts amounts to a consolidation, merger, or *de facto* merger of the Purchaser or any of its affiliates with or into any of the Debtors.

BB.    Without limiting the generality of the foregoing, none of the Purchaser, its affiliates, its and their respective present or contemplated members or shareholders, or the Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Claims relating to any U.S. federal, state or local income tax liabilities, that the Debtors may incur in connection with consummation of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, or that the Debtors have otherwise incurred prior to the consummation of the transactions contemplated by the APA.

## **Validity of Transfer**

CC.    The consummation of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, Bankruptcy Code sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f), and all of the applicable requirements of such sections have been complied with in respect of the transactions contemplated under the APA.

DD.    The Purchased Assets constitute property of the Debtors' estates and good title thereto is vested in the Debtors' estates within the meaning of Bankruptcy Code section 541(a). The Debtors are the sole and lawful owners of the Purchased Assets, and no other person has any ownership right, title, or interest therein.

**Assumed Contracts**

EE.    The assumption and assignment of the Assumed Contracts pursuant to the terms of this Order and the APA is integral to the transactions contemplated by the APA and is in the best interests of the Debtors, their estates and creditors, and all other parties in interest, and represents a reasonable exercise of the Debtors' sound and prudent business judgment.

FF.    Pursuant to the terms of the APA and this Order, on or after the Closing Date, as applicable pursuant to the terms of this Order, the Purchaser shall have, except as otherwise provided in the APA or this Order, or as otherwise expressly agreed to between the Purchaser and such counterparty:  (i)  cured, or provided adequate assurance of cure of, any monetary default existing as of and including the Closing Date under any of the Assumed Contracts, within the meaning of Bankruptcy Code section 365(b)(1)(A), (ii) provided compensation, or adequate assurance of compensation, to any party for actual pecuniary loss to such party resulting from a monetary default existing as of and including the Closing Date under any of the Assumed Contracts, within the meaning of Bankruptcy Code section 365(b)(1)(B), and (iii) provided adequate assurance of its future performance under the Assumed Contracts within the meaning of Bankruptcy Code sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B).

GG.    Upon Closing, the Purchaser will have acquired all of the Sellers' rights pursuant to any contract that relates to the use or licensing of any of the Intellectual Property or other Purchased Assets and that has been, or will be, rejected by the Sellers, including, without

limitation, (i) the right to royalty payments due and payable under any such contracts, (ii) any consent or similar quality control right in respect of a Licensee's use of any Intellectual Property and (iii) the right to assert that the Licensee's license for the use of any Intellectual Property has terminated pursuant to the terms of any such contract.

## Compelling Circumstances for an Immediate Sale

HH.    To maximize the value of the Purchased Assets and preserve the viability of the business to which the Purchased Assets relate, it is essential that the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts occur within the time constraints set forth in the APA. Time is of the essence in consummating the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts.

II.    The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts prior to, and outside of, a chapter 11 plan because, among other things, consummation of the Sale Transaction pursuant to a chapter 11 plan is not feasible and the Debtors' estates will suffer irreparable harm if the relief requested in the Motion is not granted on an expedited basis.  The transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts neither impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictates the terms of a chapter 11 plan for the Debtors, and therefore, do not constitute a *sub rosa* plan.

14

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

**<u>General Provisions</u>**

1.      The Motion is granted as provided herein, and entry into and performance under, and in respect of, the APA attached hereto as **<u>Exhibit 1</u>** and the consummation of the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts  is authorized and approved.

2.      Any objections and responses to the Motion or the relief requested therein that have not been withdrawn, waived, settled, or resolved, and all reservation of rights included in such objections and responses, are overruled on the merits and denied with prejudice.   All persons and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief granted herein.

3.      This Court's findings of fact and conclusions of law set forth in the Bid Procedures Order are incorporated herein by reference.

**<u>Approval of the APA</u>**

4.      The APA, all ancillary documents, the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts and all the terms and conditions thereof, are approved.   The failure specifically to include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety.

5.      The Debtors and their respective officers, employees and agents are authorized and directed to take any and all actions necessary, appropriate or requested by the Purchaser to perform, consummate, implement and close the Sale Transaction, including, without limitation,

15

(a) the sale to the Purchaser of all Purchased Assets, in accordance with the terms and conditions

set forth in the APA and this Order; and (b) executing, acknowledging and delivering such deeds,

assignments, conveyances and other assurance, documents and instruments of transfer and taking

any action for purposes of assigning, transferring, granting, conveying and confirming to the

Purchaser, or reducing to possession, the Purchased Assets.  The Debtors are further authorized

to pay, without further order of this Court, whether before, at or after the Closing Date, any

expenses or costs that are required to be paid in order to consummate the Transactions or perform

their obligations under the APA and the Stalking Horse Order, including, without limitation, and

subject to the terms of the Stalking Horse Order, the Expense Reimbursement and, if applicable,

the Break-Up Fee.  Any amounts that become payable by the Debtors to the Purchaser pursuant

to the Stalking Horse Order and/or the APA (and related agreements executed in connection

therewith), shall (i) constitute allowed superpriority administrative expenses of the Debtors'

estates under Bankruptcy Code sections 503(b)(1) and 507(a)(2) with priority over all other

administrative claims against the Debtors, including the DIP Obligations, the Carve Out[4] and any

other obligations owing under the DIP Order; (ii) be treated with such priority if any Chapter 11

Case is converted to a case under chapter 7 of the Bankruptcy Code; and (iii) not be discharged,

modified or otherwise affected by any reorganization plan for the Debtors, except by written

agreement with the Purchaser (such agreement to be provided in the Purchaser's sole discretion).

For the avoidance of doubt, on the Closing Date the Debtors shall pay in cash all fees and

expenses of the Purchaser accrued as of the Closing Date (subject to the amount of the Expense

Reimbursement), including the fees and expenses of Akin Gump, Strauss Hauer & Feld, LLP, as

---

[4]    Each as defined in the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing and Grant Security Interests and Superpriority Administrative Expense Status with Respect to the DIP Collateral; (II) Granting Adequate Protection to the Prepetition Secured Credit Parties; (III) Modifying the Automatic Stay; (IV) Authorizing the Debtors to Enter into Agreements with Polk 33 Lending, LLC; (V) Authorizing the Use of Cash Collateral, and (VI) Granting Related Relief* (the "DIP Order").

counsel to the Purchaser (unless otherwise agreed by the Purchaser in its sole discretion); provided, that at Closing the Purchaser may (in its sole discretion) opt to reduce the Cash Consideration by an amount equal to the Expense Reimbursement.

6.      All persons and entities are prohibited and enjoined from taking any action to prevent, adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtors to transfer the Purchased Assets to the Purchaser in accordance with the APA and this Order.

7.      The sale of the Purchased Assets to the Purchaser under the APA constitutes a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and laws of all applicable jurisdictions, including, without limitation, the laws of each jurisdiction in which the Purchased Assets are located, and the sale of the Purchased Assets to the Purchasers may not be avoided under any statutory or common law fraudulent conveyance and fraudulent transfer theories whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

**Transfer of the Purchased Assets Free and Clear**

8.      Pursuant to Bankruptcy Code sections 105(a) and 363(f), the Purchased Assets shall be sold free and clear of all Claims (subject to the License Dispute Exception), with all such Claims to attach to the proceeds of the Sale Transaction to be received by the Debtors with the same validity, force, priority and effect which they now have as against the Purchased Assets, subject to any claims and defenses the Debtors may possess with respect thereto; provided, however, that setoff rights will be extinguished to the extent there is no longer mutuality after the consummation of the Sale Transaction.

9.      At Closing, all of the Debtors' right, title and interest in and to, and possession of, the Purchased Assets shall be immediately vested in the Purchaser pursuant to Bankruptcy Code sections 105(a), 363(b), and 363(f) free and clear of any and all Claims (subject to the License Dispute Exception); *provided*, *however*, that the Licensees with respect to Licenses that are the subject of the License Disputes that remain pending and unresolved as of the date hereof, have continuing rights to use such License, which rights shall, to the extent necessary, be determined by a court of competent jurisdiction.  Such transfer shall constitute a legal, valid, binding and effective transfer of, and shall vest the Purchaser with good and marketable title to, the Purchased Assets.  All person or entities, presently or on or after the Closing Date, in possession of some or all of the Purchased Assets are directed to surrender possession of the Purchased Assets to the Purchaser or its designees on the Closing Date or at such time thereafter as the Purchaser may request.

10.     This Order is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments; and each of the foregoing persons and entities is hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sale Transaction contemplated by the APA.  The Purchased Assets are sold free and clear of any reclamation rights.

11.    Except as otherwise expressly provided in the APA or this Order, all persons and entities (and their respective successors and assigns), including, but not limited to, all debt security holders, equity security holders, affiliates, foreign, federal, state and local governmental, tax and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants and other creditors holding Claims against the Debtors or the Purchased Assets arising under or out of, in connection with, or in any way relating to, the Debtors, the Debtors' predecessors or affiliates, the Purchased Assets, the ownership, sale or operation of the Purchased Assets prior to Closing or the transfer of the Purchased Assets to the Purchaser, are hereby forever barred, estopped and permanently enjoined from asserting or prosecuting any cause of action or any process or other act or seeking to collect, offset, or recover on account of any Claims against the Purchaser, its successors or assigns, their property or the Purchased Assets.  Following the Closing, no holder of any Claim shall interfere with the Purchaser's title to or use and enjoyment of the Purchased Assets based on or related to any such Claim, or based on any action the Debtors may take in the Chapter 11 Cases.

12.    The Debtors are authorized to execute such documents as may be necessary to release any Claims of any kind against the Purchased Assets as such Claims may have been recorded or may otherwise exist.  If any person or entity that has filed financing statements, *lis pendens* or other documents or agreements evidencing Claims against or in the Purchased Assets shall not have delivered to the Debtors prior to the Closing of the Sale Transaction, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Claims that the person or entity has with respect to the Purchased Assets, (a) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the

Purchased Assets; (b) the Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all such Claims against the Purchaser and the applicable Purchased Assets; and (c) the Purchaser may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction and releases of all such Claims with respect to the Purchased Assets.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department or office.  Notwithstanding the foregoing, the provisions of this Order authorizing the sale and assignment of the Purchased Assets free and clear of Claims (subject to the License Dispute Exception) shall be self-executing, and none of the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate and implement the provisions of this Order.

13.    To the maximum extent permitted under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser with respect to the Purchased Assets as of the Closing Date.

14.    If, on or after the Closing Date, any Licensee of any of the Purchased Assets (including pursuant to any contract that may have been previously rejected by the Debtors) is required, by agreement, contract or applicable law, to make royalty or similar payments to the

Sellers on account of any Purchased Asset, such Licensee shall instead make any such payments to the Purchaser directly.

15.    No governmental unit (as defined in Bankruptcy Code section 101(27)) or any representative thereof may deny, revoke, suspend or refuse to renew any permit, license or similar grant relating to the operation of the Purchased Assets on account of the filing or pendency of the Chapter 11 Cases or the consummation of the Sale Transaction to the extent that any such action by a governmental unit or any representative thereof would violate Bankruptcy Code section 525.

## No Successor or Transferee Liability

16.    Upon the Closing Date, except as provided in the APA, the entrance of this Order and the APA shall mean that the Purchaser, as a result of any action taken in connection with the APA, the consummation of the Sale Transaction, or the transfer or operation of the Purchased Assets, shall not be deemed to: (a) be a legal successor or successor employer to the Debtors, or otherwise be deemed a successor to the Debtors, and shall instead be, and deemed to be, a new employer with respect to all federal or state unemployment laws, including any unemployment compensation or tax laws, or any other similar federal or state laws; (b) have, *de facto*, or otherwise, merged or consolidated with or into the Debtors; or (c) be an alter ego or a mere continuation or substantial continuation of the Debtors or the enterprise(s) of the Debtors, including, in the case of each of (a)-(c), without limitation, (x) within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), the WARN Act (29 U.S.C. §§ 2101 et seq.) ("WARN"), Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), the Fair Labor Standard Act, Title VII of the Civil

21

Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act, 29 U.S.C. § 151, et seq. (the "NLRA") or (y) in respect of (i) any environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to the Closing Date (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under CERCLA, (ii) any liabilities, debts or obligations of or required to be paid by the Debtors for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or (iii) any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.

17.     Without limiting the generality of the foregoing, and except as otherwise provided in the APA and this Order, neither the Purchaser nor any of its affiliates shall have any responsibility for (a) any liability or other obligation of the Debtors or related to the Purchased Assets or (b) any Claims against the Debtors or any of their predecessors or affiliates.  By virtue of the Purchasers' purchase of the Purchased Assets, neither the Purchaser nor any of its affiliates shall have any liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental (including, but not limited to CERCLA), successor or transferee liability, *de facto* merger or substantial continuity, labor and employment (including, but not limited to, WARN) or products liability law, whether known or unknown as of the Closing,

now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing. The Purchaser would not have acquired the Purchased Assets but for the foregoing protections against potential claims based upon "successor liability" theories.

18. None of the Purchaser or its affiliates, successors, assigns, equity holders, employees or professionals shall have or incur any liability to, or be subject to any action by any of the Debtors or any of their estates, predecessors, successors or assigns, arising out of the negotiation, investigation, preparation, execution, delivery of the APA and the entry into and consummation of the sale of the Purchased Assets, except as expressly provided in APA and this Order.

19. Nothing in this Order or the APA shall require the Purchaser or any of its affiliates to (a) continue or maintain in effect, or assume any liability in respect of any employee, collective bargaining agreement, pension, welfare, fringe benefit or any other benefit plan, trust arrangement or other agreements to which the Debtors are a party or have any responsibility therefor including, without limitation, medical, welfare and pension benefits payable after retirement or other termination of employment; or (b) assume any responsibility as a fiduciary, plan sponsor or otherwise, for making any contribution to, or in respect of the funding, investment or administration of any employee benefit plan, arrangement or agreement (including but not limited to pension plans) or the termination of any such plan, arrangement or agreement.

20. No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions with the Debtors that are approved by this Order, including, without limitation, the APA and the Sale Transaction.

23

**Good Faith; Arm's Length Sale**

21.     The APA has been negotiated and executed, and the Sale Transaction contemplated by the APA are and have been undertaken, by Debtors, the Purchaser and their respective representatives at arm's length, without collusion and in "good faith," as that term is defined in Bankruptcy Code section 363(m).  Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction or any term of the APA, and shall not permit the unwinding of the Sale Transaction.  The Purchaser is a good faith purchaser within the meaning of Bankruptcy Code section 363(m) and, as such, is entitled to the full protections of Bankruptcy Code section 363(m).

22.     None of the Debtors or the Purchaser has engaged in any conduct that would cause or permit the APA or the Sale Transaction to be avoided or costs, or damages or costs, to be imposed, under Bankruptcy Code section 363(n).  The consideration provided by the Purchaser for the Purchased Assets under the APA is fair and reasonable, and the Sale Transaction may not be avoided under Bankruptcy Code section 363(n).

**Assumption and Assignment of the Assumed Contracts**

23.     Except as otherwise expressly provided in the APA or this Order, upon the Closing Date, pursuant to Bankruptcy Code sections 105(a), 363, and 365, the Debtors are authorized to (a) assume each of the Assumed Contracts and assign the Assumed Contracts to the Purchaser free and clear of all Claims and (b) execute and deliver to the Purchaser such documents or other instruments as may be reasonably requested by Purchaser to assign and transfer the Assumed Contracts to the Purchaser.

24

24.     The Cure Amounts (as defined below) are the sole amounts necessary to be paid upon assumption of the Assumed Contracts under Bankruptcy Code sections 365(b)(1)(A) and (B) and 365(f)(2)(A).  All Cure Amounts, if any, shall be paid by the the Purchaser.  Upon the payment of the Cure Amounts, if any, by the Purchaser, the Assumed Contracts shall remain in full force and effect, and no default shall exist under the Assumed Contracts nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.  The Cure Amounts shall not be subject to further dispute or audit, including, without limitation, any based on performance prior to the Closing Date, irrespective of whether such Assumed Contract contains an audit clause.  After the payment of the Cure Amounts by the Purchaser, none of the Debtors or the Purchaser shall have any further liabilities to the counterparties to the Assumed Contracts other than the Purchaser's obligations under the Assumed Contracts that accrue and become due and payable on or after the Closing Date.

25.     On or prior to the Closing Date, the Purchaser shall file, or shall cause the Debtors to file, a schedule  of the Assumed Contracts (the "Closing Date Assumed Contracts Schedule") and the proposed amounts, if any, to be paid upon the assumption of each of the Assumed Contracts (the "Cure Amount").  To the extent the proposed Cure Amount listed on the Closing Date Assumed Contracts Schedule is different than the amount listed in the *Notice of Potential Assumption and Assignment of Contracts and Related Cure Amounts* [Docket No. 586], and the counterparty to such Assumed Contract disagrees with such proposed Cure Amount, such counterparty must file an objection with the Court by no later than fourteen (14) days after the Closing Date.  Further, the Purchaser reserves the right after the Closing Date to determine that any contract or unexpired lease not listed on the Closing Date Assumed Contracts Schedule shall be an Assumed Contract, subject to satisfaction of the cure and adequate assurance of future

performance requirements for assumption and assignment; <u>provided</u> that (a) the Purchaser shall file a schedule (the "<u>Additional Assumed Contracts Schedule</u>") of any such additional Assumed Contracts (the "<u>Additional Assumed Contracts</u>") and the proposed Cure Amounts, if any, related thereto, by no later than fourteen (14) days after the Closing Date and (b) in the event a counterparty to an Assumed Contract that is an Additional Assumed Contract disagrees with the Proposed Cure Amount, such counterparty must file an objection with the Court by no later than fourteen (14) days after the filing of such Additional Assumed Contracts Schedule.

26.     In the event of a dispute as of, or after, the Closing Date regarding assumption and assignment or cure of any contract or unexpired lease proposed to be an Assumed Contract, such contract or unexpired lease, any applicable cure payments shall be made following the entry of an order resolving any such dispute (or upon the consensual resolution of such dispute as may be agreed by the Purchaser and such counterparty).  In the event that after the Closing Date any such dispute is not resolved to the Purchaser's satisfaction, the Purchaser may determine that such contract or unexpired lease subject to dispute is not an Assumed Contract and upon such determination, the Purchaser shall have no liability whatsoever to the counterparty to such contract or unexpired lease that may arise prior to or after the Closing Date.

27.     Any provisions in any Assumed Contract that prohibit or condition the Debtors' assignment of such Assumed Contract or allow the party to such Assumed Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the Debtors' assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect.

28.     Each Assumed Contract constitutes an executory contract or unexpired lease under Bankruptcy Code section 365 and all requirements and conditions under Bankruptcy Code

sections 363 and 365 for the assumption by the Debtors and assignment to the Purchaser of the Assumed Contracts have been, or will be, satisfied.  Upon the Purchaser's assumption of the Assumed Contracts in accordance with the terms hereof, in accordance with Bankruptcy Code sections 363 and 365, (a) the Purchaser shall be fully and irrevocably vested with all rights, title and interest of the Debtors under the Assumed Contracts, (b) the Purchaser shall be deemed to be substituted for the Debtors as a party to the applicable Assumed Contracts, and (c) the Debtors shall be relieved, pursuant to Bankruptcy Code section 365(k), from any further liability under the Assumed Contracts.

29.    The Purchaser has demonstrated adequate assurance of future performance under the relevant Assumed Contracts within the meaning of Bankruptcy Code sections 365(b)(1)(C) and 365(f)(2)(B).

30.    There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Debtors or the Purchaser as a result of the assumption, assignment and sale of the Assumed Contracts.  The validity of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts shall not be affected by any dispute between any of the Debtors or their affiliates and another party to a Assumed Contract regarding the payment of any amount.  Upon assignment to the Purchaser, the Assumed Contracts shall be valid and binding, in full force and effect and enforceable by the Purchaser in accordance with their respective terms.

31.    Pursuant to Bankruptcy Code sections 105(a), 363, and 365, all counterparties to the Assumed Contracts are forever barred and permanently enjoined from raising or asserting against the Debtors or the Purchaser any assignment fee, default, breach or claim of pecuniary loss, or condition to assignment, arising under or related to the Assumed Contracts existing as of

27

and including the Closing Date under the APA or arising by reason of the consummation of transactions contemplated by the APA, including, without limitation, the Sale Transaction, the assumption and assignment of the Assumed Contracts, and any party that may have had the right to consent to the assignment of an Assumed Contract is deemed to have consented to such assignment for purposes of Bankruptcy Code sections 365(c)(1)(B) and 365(e)(2)(A)(ii) and otherwise if such party failed to object to the assumption and assignment of such Assumed Contract.

32.    All counterparties to the Assumed Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Purchaser, and shall not charge the Debtors or the Purchaser for any instruments, applications, consents or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Sale of the Purchased Assets.

## Resolution of Objections

33.    Notwithstanding anything in this Order, the Bid Procedures Order, the Motion, the Stalking Horse Agreement, the APA, any list or schedule of assumed contracts, assumed and assigned contracts, or cure amounts (including, without limitation, any other provision that purports to be preemptory or supervening), nothing herein or therein shall permit or otherwise effect a sale, an assignment or any other transfer at this time of (a) any insurance policies that have been issued by Federal Insurance Company, Ace American Insurance Company or any of their affiliates or successors (collectively, the "Chubb Companies") or that provide coverage at any time to any of the Debtors (or their predecessors) and all agreements, documents or instruments relating thereto (collectively, the "Chubb Insurance Contracts"), and/or (b) any rights, benefits, claims, rights to payments and/or recoveries under such Chubb Insurance

Contracts unless and until a further order is entered by this Court at a subsequent hearing, or as submitted under certification of counsel by agreement of the Debtors, the Successful Bidder and the Chubb Companies, with the rights of the parties fully preserved pending entry of such further order. Such further order, without further notice, may provide, among other things, that (i) subject to the execution of an assumption agreement by the Debtors, the Successful Bidder and the Chubb Companies, in form and substance satisfactory to each of the parties (the "Chubb Assumption Agreement"), the Debtors are authorized to assume and assign the Chubb Insurance Contracts to the Successful Bidder and the Successful Bidder shall assume and shall be liable for any and all now existing or hereinafter arising obligations, liabilities, terms, provisions and covenants of any of the Debtors under the Chubb Insurance Contracts; and/or (ii) the Debtors are authorized to enter into the Chubb Assumption Agreement; and/or (iii) such other and further relief as may be requested by the Chubb Companies, the Debtors and/or the Successful Bidder.

34.     No agreement between the Debtors and Oracle America, Inc., successor in interest to Oracle Corporation, Datalogix, Inc., Endeca Technologies, Inc. and Art Technology Group, Inc. (collectively "Oracle") will be assumed, assigned, or transferred without Oracle's prior written consent. Oracle's consent to assignment of any Oracle agreement will be conditioned upon (1) the cure of all defaults thereunder; (2) execution by Debtors and the assignee of mutually agreeable assignment documentation to be prepared by Oracle; and (3) the provision of adequate assurance regarding the assignee. No shared use, license splitting, or any other unauthorized use of any Oracle agreement will be allowed absent Oracle's express prior written consent.

**Related Relief**

35.    Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Sale Transaction contemplated by the APA.

36.    Nothing in this Order or the APA releases, nullifies, or enjoins the enforcement of any liability (including, but not limited to, for reclamation and mitigation and any associated long-term protection requirements) by a governmental unit under police and regulatory statutes and regulations that any entity would be subject to as the owner or operator of property that is sold or transferred pursuant to this Order, provided, however, that the Purchaser shall not be liable for penalties for days of violation on or prior to the consummation of the Sale Transaction. Nothing in this Order or the APA authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.

37.    No governmental unit may revoke or suspend any right, license, copyright, patent, trademark or other permission relating to the use of the Purchased Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of these Chapter 11 Cases or the consummation of the sale of the Purchased Assets.

38.    The Debtors hereby waive any and all actions related to, and hereby release, the Purchaser and its property (including, without limitation, the Purchased Assets) from any and all Claims or causes of action of any kind, whether known or unknown, now existing or hereafter arising, asserted or unasserted, mature or inchoate, contingent or non-contingent, liquidated or unliquidated, material or nonmaterial, disputed or undisputed, and whether imposed by agreement, understanding, law, equity, or otherwise, related to or arising out of the Chapter 11

Cases, the formulation, preparation, negotiation, execution, delivery, implementation or consummation of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts or any other contract, instrument, release, agreement, settlement or document created modified, amended, terminated or entered into in connection with the APA, except to the extent specifically assumed or established under the APA or this Order.

39.     In connection with the Successful Bid, and in consideration for the resolution of the Committee's reservation of rights with respect to the Motion, the Debtors have covenanted, on behalf of themselves and the Debtors' estates, not to pursue, prosecute or otherwise assert any claims or causes of action arising under chapter 5 of the Bankruptcy Code against the Debtors' non-insider trade vendors, employees, landlords and expense vendors.  Except as otherwise expressly provided in the APA, nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting, or otherwise impair or diminish, any right (including, without limitation, any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any Excluded Asset.

40.     All entities that are presently, or on the Closing Date may be, in possession of some or all of the Purchased Assets are hereby directed to surrender possession of the Purchased Assets to the Purchaser on the Closing Date.

41.     To the extent this Order is inconsistent with any prior order or pleading filed in these Chapter 11 Cases related to the Motion, the terms of this Order shall govern.  To the extent there is any inconsistency between the terms of this Order and the terms of the APA, the terms of this Order shall govern.

42.    This Order and the APA shall be binding in all respects upon all pre-petition and post-petition creditors of the Debtors, all interest holders of the Debtors, all non-debtor parties to the Assumed Contracts, the official committee of unsecured creditors appointed by the U.S. Trustee on September 26, 2017, all successors and assigns of the Debtors and their affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in these Chapter 11 Cases or upon a conversion of the Debtors' cases to those under chapter 7 of the Bankruptcy Code, including a chapter 7 trustee, and the APA and Sale Transaction shall not be subject to rejection or avoidance under any circumstances.  If any order under Bankruptcy Code section 1112 is entered, such order shall provide (in accordance with Bankruptcy Code sections 105 and 349) that this Order and the rights granted to the Purchaser hereunder shall remain effective and, notwithstanding such dismissal, shall remain binding on parties in interest.  For the avoidance of doubt, the Debtors' inability to satisfy in full all administrative expense claims of the Debtors' estates shall not be a basis for termination, rejection or avoidance (as applicable) of the APA or the Sale Transaction.

43.    This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Transaction, including any and all disputes with any counterparty to any contract or lease of the Debtors (including, without limitation, disputes with respect to assumption and assignment of any Assumed Contracts or any cure disputes) and any party that has, or asserts, possession, control or other rights in respect of any of the Debtors' assets; provided, however, that, in the

event the Court abstains from exercising or declines to exercise such jurisdiction with respect to the APA, the Bid Procedures Order, the Stalking Horse Order or this Order, such abstention, refusal, or lack of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter. This Court retains jurisdiction to compel delivery of the Purchased Assets, to protect the Debtor and its assets, including the Purchased Assets, against any Claims and successor and transferee liability and to enter orders, as appropriate, pursuant to Bankruptcy Code sections 105(a) or 363 (or other applicable provisions) necessary to transfer the Purchased Assets to the Purchaser.

44.    At any time prior to the Closing Date, the Purchaser may terminate the APA pursuant to the terms thereof without any penalty or liability to the Debtors, their estates or their creditors and other parties in interest.

45.    The APA and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court.

46.    This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding any provision in the Bankruptcy Rules to the contrary, including but not limited to Bankruptcy Rule 6004(h), the Court expressly finds there is no reason for delay in the implementation of this Order and, accordingly: (a) the terms of this Order shall be immediately effective and enforceable upon its entry; (b) the Debtors are not subject to any stay of this Order or in the implementation, enforcement or realization of the relief granted in this Order; and (c) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

47.     The Purchaser shall not be required to seek or obtain relief from the automatic stay under Bankruptcy Code section 362, to give any notice permitted by the APA or to enforce any of its remedies under the APA or any other sale-related document.  The automatic stay imposed by Bankruptcy Code section 362 is modified solely to the extent necessary to implement the preceding sentence; provided however, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

48.     The provisions of this Order are non-severable and mutually dependent.

49.     The requirements set forth in Bankruptcy Rule 6004 and Local Bankruptcy Rule 6004-1 have been satisfied or otherwise deemed waived.

50.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

Wilmington, Delaware
Date:  February [____], 2018                    _____
                                                THE HONORABLE KEVIN J. CAREY
                                                UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**APA**