UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AEROGROUP INTERNATIONAL INC., et al.,[1]<br><br>Debtors | CHAPTER 11<br><br>Case No. 17-11962 (KJC)<br>(D.I. 922) |

## OPINION[2]

**BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE**

On March 6, 2018, the Debtors in this chapter 11 case sold their assets at an auction, receiving net sale proceeds of $25,450,000 (the "Sale Proceeds").[3] The assets sold are encumbered by the liens of THL Corporate Finance, Inc. ("THL")[4] and Polk 33 Lending, LLC ("Polk" or the

---

[1] The debtors in these jointly administered chapter 11 cases are Aerogroup International, Inc., AGI Holdco, Inc., Aerogroup International LLC, Aerogroup International Holdings LLC, Aerogroup Retail Holdings, Inc., and Aerogroup Gift Card Company (the "Debtors").

[2] This Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 157 and § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

[3] The auction was held in accordance with the Order (A) Approving Bid Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Approving Related Contract Assumption and Assignment Procedures, (C) Authorizing the Debtor to Enter Into Stalking Horse Agreements and Approving Certain Bid Protections, Subject to a Further Hearing, (D) Scheduling a Sale Hearing, and (E) Granting Certain Related Relief, entered on January 31, 2018 (D.I. 566). On February 13, 2018, the Debtors filed a Notice of Filing of Stalking Horse Agreement with Proposed Bid Protections (D.I. 618) and advised the Court that it had entered into an Asset Purchase Agreement with Alden Global Capital, LLC. On February 14, 2018, the Court entered an Order (I) Approving Selection of a Stalking Horse, (II) Approving the Bid Protections, and (III) Granting Related Relief (D.I. 635).

[4] THL is acting in its capacity as administrative agent to the Debtors' Prepetition Term Loan Lenders, as that term is defined in the Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing and Grant Security Interests and Superpriority Administrative Expense Status with Respect to the DIP Collateral; (II) Granting Adequate Protection to the Prepetition Secured Credit Parties; (III) Modifying the Automatic Stay; (IV) Authorizing the Debtor to Enter Into Agreements with Polk 33 Lending, LLC (V) Authorizing Use of Cash Collateral; and (VI) Granting Related Relief (D.I. 231) (the "Final DIP Order")

"DIP Lender"). Pursuant to the Final DIP Order and the Order authorizing the Sale,[5] the Sale Proceeds have been placed in a sale escrow account pending distribution to THL and Polk, either by mutual agreement of THL and Polk or pursuant to an order of this Court.

THL and Polk filed three motions related to the escrowed Sale Proceeds:

(1) Polk 33 Lending, LLC's Motion to Enforce Agreement By and Among the Debtors, Polk 33 Lending, LLC and THL Corporate Finance, Inc. (D.I. 779) (the "Polk Motion");

(2) THL Corporation Finance, Inc.'s Motion for Entry of Order (I) Valuing Secured Claims for Purpose of Allocating Sale Proceeds to Such Secured Claims and (II) Ordering Distributions (D.I. 803) (the "THL Motion"); and

(3) Motion to Strike the February 15-16, 2018 Transcript of Auction Proceedings and Debtors' Preliminary Draft Analysis Attached to and in Support of [the THL Motion] (D.I. 846) (the "Motion to Strike") (the Polk Motion, the THL Motion and the Motion to Strike are referred to collectively as the "Collateral Valuation Motions").

The Court entered a Scheduling Order on May 18, 2018 for discovery and the filing of a Joint Pretrial Submission related to the Collateral Valuation Motions.[6] The Scheduling Order also set a hearing on June 29, 2018 to consider the Collateral Valuation Motions.

On June 8, 2018, Polk filed a motion for summary judgment regarding the THL Motion.[7] (the "Summary Judgment Motion"), along with a motion to shorten the briefing and notice period for that motion. After a conference call on June 12, 2018, this Court entered an Order setting an expedited briefing schedule for the Summary Judgment Motion.[8]

---

[5] The Order (I) Authorizing the Sale of Certain Assets of the Debtors Free and Clear of All Liens, Claims, Liabilities, Rights, Interests and Encumbrances and Other Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (III) Granting Related Relief (D.I. 671) (the "Sale Order").

[6] D.I. 890.

[7] The motion was titled Polk 33 Lending, LLC's Motion for Summary Judgment Allocating Sale Proceeds and Ordering Distributions (D.I. 922).

[8] D.I. 933.

On June 18, 2018, THL filed a brief in opposition to Polk's Summary Judgment Motion.[9] On June 20, 2018, Polk 33 filed a Reply in support of the Summary Judgment Motion.[10] The parties also filed declarations, affidavits and a copy of the auction transcript in support of their respective positions on the Summary Judgment Motion. Debtors' counsel also filed a declaration in opposition to the Summary Judgment Motion (D.I. 958) (the "Galardi Declaration").[11]

The parties participated in mediation (twice) in an attempt to resolve issues underlying the Collateral Valuation Motions. Mediation was not successful.

On June 21, 2018, the Court held a telephonic status conference regarding the Summary Judgment Motion and the upcoming hearing on the Collateral Valuation Motions. At that hearing, I informed the parties that I intended to deny Polk's Summary Judgment Motion, the reasons for which are set forth below.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure, made applicable by Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.[13]

---

[9] D.I. 956.
[10] D.I. 964.
[11] In its Reply Brief, Polk objected to the Galardi Declaration as "too little, too late, and too wrong." Reply Br. at 9. The original scheduling order for the Collateral Valuation Motions did not provide for the filing of summary judgment motions, yet I agreed to consider Polk's Summary Judgment Motion on an expedited basis. Due to the expedited nature of this matter, I will not consider the Galardi Declaration as untimely. Also, whether the facts in the declaration are "correct" is a determination that will be made after a hearing on the evidence, not as part of the Summary Judgment Motion.
[12] Fed. R. Civ. P. 56(a).
[13] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the burden of establishing the absence of a genuine dispute as to a material fact.[14] "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."[15] When the nonmoving party bears the burden of persuasion at trial, the moving party "may meet its burden . . . by showing that the nonmoving party's evidence is insufficient to carry that burden."[16]

Once the moving party has carried its initial burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."[17]  Summary judgment cannot be avoided by introducing only "a mere scintilla of evidence,"[18] or by relying on "conclusory allegations, improbable inferences and unsupported speculation."[19] "Brash conjecture coupled with earnest hope that something concrete will materialize, is insufficient to block summary judgment."[20]

Substantive law determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit will preclude summary judgment."[21] Moreover, a dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the

---

[14] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24, 106 S.Ct. 2548, 2552-53 91 L.Ed.2d 265 (1986)
[15] *Id.*, 477 U.S. at 323, 106 S.Ct. at 2553.
[16] *Foulk v. Donjon Marine Co., Inc.*, 144 F.3d 252, 258 n.5 (3d Cir. 1998) (quoting *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998)).
[17] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).
[18] *Sarko v. Penn-Del Directory Co.*, 968 F.Supp. 1026, 1031 (E.D. Pa. 1997) (citation omitted), *aff'd* 189 F.3d 464 (3d Cir. 1999).
[19] *J.Geils Band Emp. Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1251 (1st Cir. 1996) (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5,8 (1st Cir. 1990)).
[20] *Id.* at 1251 (quoting *Dow v. United Bhd. of Carpenters*, 1 F.3d 56, 58 (1st Cir. 1993)).
[21] *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

nonmoving party."[22] The Court must resolve all doubts and consider the evidence in the light most favorable to the nonmoving party.[23]

## DISCUSSION

At the auction, THL submitted a credit bid of approximately $12.2 million (the "Credit Bid").[24] Polk refers to THL's Credit Bid as a "final bid," because THL did not submit any further credit bids at the auction. THL explains that the Credit Bid was an "incremental bid" that met the minimum incremental amount required under the approved bidding procedures to top bids placed by other third-parties. THL also asserts that the Auction was paused after THL's Credit Bid and, during the break, counsel for the Debtors asked THL to refrain from further credit bidding, given that there was momentum for a higher sale price for the Debtors' assets.[25] THL says that it agreed to refrain from credit bidding, but reserved its right to resume credit bidding if other bidders did not bid an amount that was satisfactory to THL.[26] Consequently, two other bidders engaged in competitive bidding, one of whom became the winning bidder at a price for the combined assets, including THL's collateral, that was higher than THL's Credit Bid.

Relying on the Third Circuit's decisions in *Submicron* and *Philadelphia Newspapers*, Polk argues that THL's "final" Credit Bid established the secured amount of THL's claim.[27] The competing declarations in this case underscore the first reason for denying Polk's Summary

---

[22] *Id. See also Delta Mills, Inc. v. GMAC Comm. Fin., LLC (In re Delta Mills, Inc.)*, 404 B.R. 95, 105 (Bankr. D. Del. 2009) (An issue is genuine "when reasonable minds could disagree on the result.").

[23] *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2505 ("[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.").

[24] *See* Auction Tr. 2/15-16/2018, p. 140. The Auction Transcript is attached as Exhibit A to the Summary Judgment Motion.

[25] Decl. of Michelle Handy, ¶¶ 6-8 (THL Brief, Ex. A) ("Handy Decl."); Decl. of M. Blake Cleary, ¶¶ 6 – 9 (THL Brief, Ex. B) ("Blake Decl."); Galardi Decl., ¶¶ 5-7.

[26] Handy Decl, ¶ 8; Galardi Decl., ¶7.

[27] *Cohen v. KB Mezzanine Fund II, LP (In re Submicron Sys. Corp.)*, 432 F.3d 448 (3d Cir. 2006); *In re Philadelphia Newspapers, LLC*, 599 F.3d 298 (3d Cir. 2010).

Judgment Motion - - that is, a dispute over the material fact of whether THL's credit bid was a "final" bid.

However, THL also contends that Polk's arguments rely on a disingenuous and misleading misinterpretation of Third Circuit law. I agree.

In *Submicron*, the Third Circuit considered whether a lender can submit a § 363(k)[28] credit bid without demonstrating how much (if any) of its claim is secured by the collateral pursuant to § 506(a).[29] The *Submicron* Court recognized that "[i]t is well settled among district and bankruptcy courts that creditors can bid the full face value of their secured claims under § 363(k)"[30] and noted that the "plain language of [section 363(k)] makes clear that the secured creditor may credit bid its *entire claim,* including any unsecured deficiency portion thereof."[31] The Court stated that "logic demands that § 363(k) be interpreted in this way; interpreting it to cap credit bids at the economic value of the underlying collateral is theoretically nonsensical" and provided the following hypothetical to illustrate:

> Assume that Debtor has a single asset: a truck, T. Lender is a secured creditor that has loaned Debtor $15, taking a security interest in T. Debtor is in Chapter 11 bankruptcy and has filed a § 363 motion to sell T to Bidder for $10. Debtor argues that Lender can only credit bid $10 for T and must bid any excess in cash if it wishes to outbid B.

---

[28] Bankruptcy Code § 363(k) provides: "At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

[29] Bankruptcy Code § 506(a)(1) provides: "An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."

[30] *Submicron,* 432 F.3d at 459.

[31] *Id.* (quoting *In re SunCruz Casinos, LLC,* 298 B.R. 833, 839 (Bankr. S.D.Fla. 2003)) (emphasis in original).

> This hypothetical reveals the logical problem with an actual value bid cap. If Lender bids $12 for T, by definition $12 *becomes* the value of Lender's security interest in T. In this way, until Lender is paid in full, Lender can always overbid Bidder. (Naturally, Lender will not outbid Bidder unless Lender believes it could generate a greater return on T than the return for Lender represented by Bidder's offer.) *As Lender holds a security interest in T, any amount bid for it up to the value of Lender's full claim becomes the secured portion of Lender's claim by definition.*[32]

Polk relies, in part, on the foregoing sentence (highlighted above) to support its position that a secured creditor's final credit bid sets the amount of the secured portion of its claim. Polk also argues that the Third Circuit reinforced this position in the *Philadelphia Newspapers* decision, when it wrote: "*Submicron* is consistent with our analysis in this case. *Our holding that a credit bid sets the value of a lender's secured interest in collateral* does not equate to a holding that a credit bid must be the successful bid at a public auction."[33]

Polk's argument relies on language plucked out of cases without context and fails to recognize the basic premise: an auction allows the marketplace to determine the value of the collateral,[34] which, in turn, determines the value of the secured portion of claim. In other words, the highest bid - - no matter who makes it - - sets the assest's value. "The ability to credit-bid helps to protect a creditor against the risk that its collateral will be sold at a depressed price. It

---

[32] *Id.* at 460 (footnote omitted) (emphasis added).

[33] *Philadelphia Newspapers*, 599 F3d at 312 (emphasis added). The issue in *Philadelphia Newspapers* did not involve a credit bid at a § 363 auction. Instead, the issue was whether a secured creditor could be denied the right to credit bid in connection with the sale of its collateral under a plan of reorganization so long as the creditor was provided with the "indubitable equivalent" of its collateral under § 1129(b)(2)(A)(iii). The Third Circuit held that such a plan was permissible under the plain language of the Bankruptcy Code. *Id.* at 311 ("A plain reading of § 1129 (b)(2)(A)(iii) therefore compels the conclusion that, when a debtor proceeds under subsection (iii), Congress has provided secured lenders with no right to credit bid at a sale of the collateral."). The Supreme Court, however, later rejected this conclusion in *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 647 (2012) ("Thus, debtors may not sell their property free of liens under § 1129(b)(2)(A) without allowing lienholders to credit-bid, as required by clause (ii)").

[34] "The fair market value of a business or asset is the highest amount that a reasonably well-informed purchaser would pay in arm's length negotiations in an open and unrestricted market." *In re Nortel Networks, Inc.*, 532 B.R. 494, 521 n. 165 (Bankr. D. Del. 2015) (quoting *United States v. Cartwright*, 411 U.S. 546, 551, 93 S.Ct. 1713, 36 L.Ed.2d 528 (1973)).

enables the creditor to purchase the collateral for what it considers the fair market price (up to the amount of its security interest) without committing additional cash to protect the loan."[35] Allowing the secured creditor to credit bid the full amount of its claim allows the secured creditor to submit a higher bid over a depressed price, but the secured creditor is not required to bid the full amount of its claim if third parties bid a fair price for the collateral.  Indeed, if a secured creditor does not credit bid in a § 363 sale, it does not forfeit its right to recover the secured portion of its claim from the auction proceeds.

I return to the *Submicron* hypothetical of a lender who loaned $15 to the debtor secured by an interest in the truck, T.  If the debtor files a § 363 motion intending to sell T at auction for $10, the lender may submit a higher bid ($12) and, if lender is the successful bidder, then the secured portion of its claim is $12.  However, if, subsequent to the lender's bid, a third party bids $14 for T, the lender is not required to bid $15 to reset the value of its secured claim above its final bid of $12.  The market has set the value of T at $14 and, therefore, the secured portion of the lender's claim is $14.

Accordingly, I reject Polk's argument that the secured portion of THL's claim is determined by its Credit Bid rather than the market price for the collateral.  The Summary Judgment Motion is denied.  An appropriate order follows.

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated:  June 25, 2018

---

[35] *RadLAX,* 566 U.S. at 644 n.2.