**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| AEROGROUP INTERNATIONAL, INC., *et al.*, | ) Case No. 17-11962 (CSS) |
| | ) |
| Debtors.[1] | ) (Jointly Administered) |
| | ) |
| | ) |
| AEROGROUP INTERNATIONAL, INC., *et al.*, | ) |
| | ) |
| Plaintiffs, | ) Adversary Proceeding |
| | ) No. 18-50715 (CSS) |
| v. | ) |
| | ) **Hearing Date: October 15, 2019 at 12:00 _ p.m. (ET)** |
| GBG USA INC., | ) **[REQUESTED]** |
| | ) |
| Defendant. | ) **Obj. Deadline:  October 11, 2019 at 12:00 p.m. (ET)** |
| | ) **[REQUESTED]** |
| | ) |

**DEBTORS' MOTION PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY
CODE AND BANKRUPTCY RULE 9019 FOR ENTRY OF AN ORDER (I)
APPROVING THE SETTLEMENT AGREEMENT BETWEEN POLK 33 LENDING,
LLC, THL CORPORATE FINANCE, INC., AND THE DEBTORS AND
(II) DISMISSING CHAPTER 11 CASES**

Aerogroup International, Inc., AGI Holdco, Inc., Aerogroup International LLC, Aerogroup

International Holdings LLC, Aerogroup Retail Holdings, Inc., and Aerogroup Gift Card Company,

Inc. (collectively, the "**Debtors**"), by and through their undersigned counsel, hereby submit this

motion (the "**Motion**"), pursuant to section 105(a) of the Bankruptcy Reform Act of 1978, as

codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**")

---

[1]     The debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Aerogroup International, Inc. (6119), AGI Holdco, Inc. (7087), Aerogroup International, LLC (4658), Aerogroup International Holdings, LLC (4312), Aerogroup Retail Holdings, Inc. (4650), and Aerogroup Gift Card Company, Inc. (7551). The mailing address for the Debtors, solely for purposes of notices and communications, is: 201 Meadow Road, Edison, New Jersey 08817.

and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry

of an order (i) approving the terms and conditions of that certain settlement (the "**Settlement**")

between the Debtors, Polk 33 Lending, LLC ("**Polk**"), and THL Corporate Finance, Inc. ("**THL**")

embodied in that certain Settlement Agreement dated as of October 7, 2019 (attached hereto as

Exhibit A, the "**Settlement Agreement**"), (ii) dismissing these chapter 11 cases, and (iii) granting

related relief.  In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.        This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue of these cases and

this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.        Pursuant to Local Rule 9013-1(f), the Debtors consent to entry of a final order with

respect to this Motion to the extent that it is later determined that the Court, absent consent of the

parties, cannot enter final orders or judgments in connection herewith consistent with Article III

of the United States Constitution.

3.        The basis for the relief requested herein is section 105(a) of the Bankruptcy Code

and Bankruptcy Rule 9019(a).

## BACKGROUND

4.        On September 15, 2017 (the "**Petition Date**"), the Debtors filed voluntary petitions

for relief under chapter 11 of the Bankruptcy Code.  Pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in

possession.

5.        On September 26, 2017, Region 3 of the Office of the United States Trustee (the

"**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors.  No trustee or examiner

has been appointed in these Chapter 11 Cases.

6.       On November 20, 2017, this Court entered an order approving the Debtors'

postpetition financing and use of cash collateral on a final basis [D.I. 231] (the "**Final DIP**

**Order**").

### A.   The Failed Plan Process and Resulting Sale

7.       Between October and January 2018, the Debtors pursued a chapter 11 plan under

which GBG USA, Inc. ("**GBG**") would purchase the Debtors' inventory, leases and distribution

contracts, and the Debtors would license their intellectual property to GBG. This arrangement was

memorialized in an Asset Purchase Agreement and related documents (the "**APA**"), which the

Debtors and GBG entered on December 5, 2017.

8.       On the morning of January 17, 2018, shortly before the Court was to hold a hearing

to confirm the Debtors' chapter 11 plan, GBG terminated the APA.

9.       After the failed plan, the Debtors were forced to run a sale process on a fast timeline.

As a result of such process, on February 21, 2018, this Court entered a sale order [D.I. 671] (the

"**Sale Order**") approving a sale (the "**Sale**") of substantially all of the Debtors' assets.

### B.   The Allocation Dispute and Sale Proceeds Distribution

10.      Following the closing on the Sale, the activity in these cases has largely centered

around certain disputes related to the Debtors' senior lenders, Polk and THL.  In June and July of

2018, this Court held a two- day trial regarding the lenders' allocation disputes.  On March 26,

2019, this Court issued a decision (the "**Allocation Order and Opinion**") regarding the allocation

dispute between Polk and THL.  Notwithstanding an appeal of such decision by Polk (the

"**Allocation Appeal**"), in May of 2019, the Debtors, THL and Polk agreed to the distribution of

certain proceeds of the Sale to THL and Polk, subject to reservation of funds sufficient to pay

certain fees and expenses related to the winddown of the Debtors' estates, including pursuant to an agreed budget (the "**Winddown Budget**").

11.    On May 28, 2019, the Debtors released proceeds of the Sale in the amount of $9,222,277 to THL and $5,386,289 to Polk.  Other than UST fees for the prior quarter, these were the only disbursements from the Debtors' accounts during the second quarter of 2019.

12.    Subsequent to making the distributions, the Debtors realized that, due to an accounting error, they did not withhold amounts sufficient to pay the outstanding UST Fees that would accrue from the distributions.

### C.  The GBG Adversary Proceeding and Settlement

13.    In addition, over the last year or so, the Debtors have monetized their claims against GBG.  To that end, on August 30, 2018, the Debtors commenced Adversary Proceeding No. 18-50715 against GBG related to its termination of the APA.  After extensive negotiations and a successful mediation, on March 12, 2019, the Debtors and GBG executed a Settlement Agreement providing for a settlement payment to the Debtors in the amount of $4,200,000 (the "**GBG Settlement**").

14.    On May 13, 2019, the Court entered an Order and issued an Opinion [D.I. 1183, 1184] (the "**GBG Order and Opinion**") approving the GBG Settlement.

15.    On May 28, 2019, THL appealed the GBG Order and Opinion (the "**THL Appeal**"), which raised issue with the manner in which the proceeds of the GBG Settlement are distributed.

16.    On August 30, 2019, the Debtors filed a motion pursuant to Federal Rule of Bankruptcy Procedure 8008 in which it sought to remand the THL Appeal for the purpose of making the GBG Order and Opinion final as to the settlement amount and to pay the Debtors'

attorneys' fees and costs immediately (the "**Rule 8008 Motion**"). The Debtors believed this would allow GBG to fund the settlement, the proceeds of which (after payment of attorneys' fees and costs) the Debtors' proposed would be held in trust pending resolution of the THL Appeal.

17.     Polk advised the Debtors that it would object to the Rule 8008 Motion on a number of grounds, including among other things, that Polk believed such relief (i) was not warranted under Rule 8008, (ii) violated the Debtors' obligations under an enforceable forbearance agreement with Polk, and (iii) would benefit only the Debtors' attorneys and harm the estates.

### D.  Additional Recent Filings

18.     As noted above, the lender distributions on May 28, 2019 inadvertently did not hold back funds to pay UST fees on such distributions.  To recover such funds, on August 21, 2019, the Debtors filed the *Debtors' Motion to Compel Polk 33 Lending, LLC to Comply with its Obligations under the Bankruptcy Code and the Final DIP Order* [D.I. 1220] (the "**Motion to Compel**").

19.     Thereafter, on August 30, 2019, Polk filed the *Motion of Polk 33 Lending, LLC to Convert or Dismiss the Debtors' Chapter 11 Cases* [D.I. 1225] (the "**Motion to Convert or Dismiss**") and in connection therewith issued certain discovery requests to the Debtors (the "**Discovery Requests**").

20.     Following such filings, the Debtors, THL, and Polk negotiated a consensual resolution of the remaining contested matters in the chapter 11 cases, save only for the Allocation Appeal.  Such resolution is set forth below and would (i) permit the GBG Settlement to become final and proceeds thereof to be distributed and (ii) provide for consensual dismissal of the chapter 11 cases.

## RELIEF REQUESTED

21.     By this Motion, the Debtors request, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a), entry of an order, substantially in the form attached hereto as Exhibit B (the "**Settlement Approval Order**"), approving the Settlement Agreement and authorizing the Debtors and Polk, THL, and GBG to take any and all actions necessary or appropriate to consummate the Settlement Agreement including the dismissal of the THL Appeal and the dismissal of the Chapter 11 Cases.

## SUMMARY OF MATERIAL TERMS OF SETTLEMENT AGREEMENT

22.     The material terms of the Settlement Agreement are as follows:[2]

(a)     **Dismissal of THL Appeal**.  Within one (1) business day after approval of the Settlement Agreement by the Bankruptcy Court, THL shall file the Stipulation of Dismissal of the THL Appeal attached to the Settlement Agreement as **Exhibit 1**.  The parties agree to stay briefing in the GBG Appeal pending the Bankruptcy Court's ruling on the motion to approve the Settlement Agreement

(b)     **Distribution of GBG Settlement Proceeds.**  Within one (1) business day of receipt by Reid Collins & Tsai LLP ("**RCT**") of the proceeds of the GBG Settlement proceeds, RCT shall:

(i)     Transfer $189,730 to the Debtors' bank account for payment of fees to the Office of the United States Trustee;

(ii)     Transfer $2,791,024 to an account designated by Polk; and

(iii)     Pay remaining amounts to RCT and for expenses incurred in connection with the GBG matter as set forth in the *Order Approving the First and Final Application for Compensation of Reid Collins & Tsai LLP for Allowance of Compensation and Reimbursement of Expenses as Special Litigation Counsel to the Debtors for the period from August 8, 2018 through April 25, 2019* [D.I. 1199].

(c)     **Final Order**.  The settlement and compromises contained in the Settlement Agreement shall become effective and binding in all respects upon entry of the Settlement Approval Order (attached hereto as Exhibit B.  In the event that the Court denies this

---

[2]     The summary set forth herein is provided for reference and convenience only, and is qualified and supplemented in its entirety by the provisions of the Settlement Agreement attached as Exhibit A hereto.  Parties in interest are encouraged to read the Settlement Agreement in its entirety.  Capitalized terms used in this summary have the meanings given to them in the Settlement Agreement if not otherwise defined herein.

Motion, then the Parties shall be returned, as of such date, to the *status quo ante* prior to their entry into the Settlement Agreement.

(d) **Dismissal Order**. Following the occurrence of the events set forth in sections (b)(i)-(iii) above, the Debtors shall submit the Dismissal Order attached as **Exhibit 2** to the Settlement Agreement under certification of counsel to the Bankruptcy Court for entry.

(e) **9019 Settlement**. The recitals and agreements set forth in the Settlement Agreement, are expressly conditioned upon the Court's entry of the Settlement Approval Order.

(f) **Support**. The Parties agree to cooperate with each other to the extent necessary and reasonable, and use their collective best efforts to enable the entry of the Settlement Approval Order.

(g) **Distributions in Excess of DIP Obligations**. Polk agrees that it shall pay to THL (by wire transfer or other mutually agreed upon form of payment) any proceeds or distributions received by Polk in excess of the DIP Obligations (as defined in the Final DIP Order) within five (5) business days of the receipt of such proceeds or distributions.

(h) **Mutual Release**. Polk agrees to release THL, and THL agrees to release Polk, from any and all claims or liability in any way arising from or relating to, directly or indirectly, the Debtors or their chapter 11 cases; provided, however, that nothing contained in this mutual release section shall or shall be construed to affect in any way Polk's right or ability to prosecute its appeal of the Bankruptcy Court's allocation decision, currently pending in the United States District Court for the District of Delaware [Case No. 19-967 (MN)], or THL's rights relating to such appeal.

**BASIS FOR RELIEF REQUESTED**

**A.    The Settlement Satisfies the Standard for Approval Pursuant to Bankruptcy Rule 9019**

23.    Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

24.    In determining whether to approve a proposed settlement pursuant to Bankruptcy Rule 9019(a), the Third Circuit requires a bankruptcy court to "apprise[] itself of all facts necessary to form an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated, and estimate[] the complexity, expense and likely duration of such litigation,

and other factors relevant to a full and fair assessment of the [claims]." *In re Penn Cent. Transp. Co.*, 596 F.2d 1127, 1146 (3d Cir. 1979).

25.     The approval of a settlement under Bankruptcy Rule 9019 is within the sound discretion of the bankruptcy court.  *Martin*, 91 F.3d 389, 396 (3d Cir. 1996).  This Court, however, need not substitute its judgment for that of the Parties.  *See In re Neshaminy Office Bldg. Assoc's*, 62 B.R. 798, 803 (Bankr. E.D. Pa. 1986).  The Court does not have to be convinced that the settlement is the best possible compromise, but only that the settlement "falls below the lowest point in the range of reasonableness."  *In re Penn. Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992), *aff'd*, 8 F.3d 812 (3d Cir. 1993) (holding that to approve a compromise or settlement pursuant to Bankruptcy Rule 9019, the court must conclude that the compromise or settlement falls above the lowest point in the range of reasonableness).

26.     The Third Circuit has enumerated four factors that should be considered in determining whether a settlement should be approved:  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."  *Martin*, 91 F.3d at 393 (*citing Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968); *Neshaminy Office Bldg. Assocs.*, 62 B.R. at 803).  Consideration of these factors requires the Court to make an objective, informed comparison of the results of litigation versus the benefits of compromise.  *See TMT Trailer*, 390 U.S. at 424.

27.     The first factor (probability of success of litigation) is satisfied here because, in the absence of the Settlement Agreement, there is a high degree of uncertainty as to whether the Debtors would have been able to continue to remain in chapter 11 with a favorable outcome.  The

Settlement Agreement also resolves the Motion to Compel and the Rule 8008 Motion. Although the Debtors are confident as to their positions in those motions, success in litigation is never certain and both motions present unique circumstances.

28.    The second factor (likely difficulties in collection) is also satisfied or inapplicable here. The Settlement Agreement sets forth a process that will permit the estates to collect the GBG Settlement proceeds as expeditiously as possible while also permitting a resolution to the chapter 11 cases without additional administrative costs.  Further, as to the monetary recovery sought in the Motion to Compel, Polk has asserted that it has no funds to remit to the estates.

29.    The third factor (complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it), is satisfied because the Debtors, Polk, and THL, engaged in good faith, arms' length discussions to resolve the THL Appeal, the Motion to Compel, the Motion to Convert, the Rule 8008 Motion, and to wind-up the Chapter 11 Cases.  The matters at issue in these motions are intertwined and unique.  As to the THL Appeal, it is entirely unclear how long it would take to finally resolve the appeal and the finality of the GBG Opinion and Order is the key to resolving all of the disputed matters.

30.    The fourth and final factor (paramount interest to creditors) is also satisfied here. The Settlement Agreement provides for a full resolution of the THL Appeal, the Motion to Compel, and the Motion to Convert.  Winding up the chapter 11 cases through the Settlement Agreement is in the interest of all creditors as such agreement is designed to avoid unnecessary and value-consuming litigation tactics and bring closure.

31.    Accordingly, the Debtors respectfully submit that consideration of the factors set forth above dictates that the Settlement satisfies the Third Circuit's requirements under Bankruptcy Rule 9019 in all respects and is in the best interests of the Debtors' estates.

**B.      The Chapter 11 Cases Should Be Dismissed As Part of the Settlement**

32.      In addition, the Settlement Agreement provides a path to closure in these cases through dismissal.  Through this motion and as a part of the Settlement Agreement, the Debtors request entry of and order following the filing of the Certification (as defined below), that (a) dismisses the Debtors' chapter 11 cases and (b) grants related relief, including, without limitation, (i) authorizing, but not directing, the Debtors to abandon and destroy any and all of the Debtors' remaining books and records and (ii) authorizing, but not directing, the Debtors to be dissolved on the terms provided for in the dismissal order.

33.      As described above, there is nothing left to be accomplished in these cases.  The Debtors liquidated substantially all of their assets in connection with the Sale and there is no business left to reorganize.  The Debtors no longer conduct any business and have no remaining assets to be monetized.  At the same time, administrative claims, such as fees and expenses of retained professionals and U.S. Trustee fees, continue to accrue each day the chapter 11 cases remain open.  The remaining issues following the Sale of addressing the lender disputes and monetizing the Debtors' claims against GBG.  Both of those matters have now been addressed and the remaining Allocation Appeal affects matters solely between Polk and THL and does not require that these cases remain open.

34.      Further, the Debtors believe that dismissal, rather than conversion, of these cases meets the "best interests of creditors" test because the debtors have nothing to reorganize, and the Debtors' assets are fixed and liquidated.  *See Camden Ordinance Mfg. Co. of Ark., Inc. v. U.S. Trustee (In re Camden Ordinance Mfg. Co. of Ark., Inc.)*, 245 B.R. 794, 799 (E.D. Pa. 2000) (reorganization to salvage business which ceased business was unfeasible); *Royal Trust Bank, N.A. v. Brogdon Inv. Co. (In re Brogdon Inv. Co.)*, 22 B.R. 546, 549 (Bankr. N.D. Ga. 1982) (court

dismissed chapter 11 proceeding in part where there was "simply nothing to reorganize" and no reason to continue the reorganization).

35.    Second, courts have found that dismissal is in the "best interests of creditors" where an interested party, other than the debtor, supports the dismissal.  *See Camden Ordinance*, 245 B.R. at 798; *In re Mazzocone*, 183 B.R. 402, 414 (Bankr. ED. Pa. 1995), *aff'd*, 200 B.R. 568 (E.D. Pa. 1996) (finding that factors weighed more heavily in favor of dismissal of chapter 11 case rather than conversion to chapter 7, where debtor and U.S. Trustee both favored dismissal). Here, both the Debtors senior secured lenders support the proposed dismissal and the Debtors believe that the Committee does not oppose the dismissal.

36.    Finally, dismissal is appropriate where, as here, it will maximize the value of the Debtors' estates because the alternative – conversion to a chapter 7 liquidation and appointment of a trustee – is (i) unnecessary and would provide no benefit to creditors and (ii) would impose significant additional administrative costs upon the Debtors' estates without any meaningful source of funds to satisfy such costs.  Under the circumstances, a chapter 7 trustee would have extremely limited funds, if any, to satisfy additional claims arising after conversion to cases under chapter 7 of the Bankruptcy Code.  As explained above, substantially all of the Debtors' assets have been sold.  Since the closing of the sale, the Chapter 11 Cases have been funded solely pursuant to the consensual use of cash collateral.  By continuing in bankruptcy under chapter 7 (or chapter 11), the Debtors would just incur additional administrative expenses that they would be unable pay.  Thus, the Debtors submit that a dismissal pursuant to section 1112 of the Bankruptcy Code is in the best interests of the Debtors' creditors and their estates.

37.    Thus, in balancing the equities of the Debtors' Chapter 11 Cases, the Debtors submit that it is in the best interests of their estates and creditors to dismiss the Chapter 11 Cases.

11

## C.    Ancillary Relief Should Be Granted

38.    **First**, the Debtors request that the Court authorize, but not direct, the Debtors to abandon and destroy any remaining books and records pursuant to sections 105(a) and 554 of the Bankruptcy Code, and Bankruptcy Rule 6007.  As previously discussed, the Debtors have sold substantially all of their assets, no longer have an operating business and have largely wound down their affairs.  Substantially all of their books and records were transferred to the purchaser as part of the Sale.  To the extent any books and records are retained, they will be of no value to the Debtors after dismissal of the chapter 11 cases.  For those reasons, the Debtors submit that they should be authorized to abandon and destroy, as applicable, such books and records.

39.    **Second**, because the Debtors have sold substantially all of their assets and ceased operations, the Debtors intend for their corporate entities to be dissolved as soon as reasonably practicable upon entry of a final dismissal order.  It is appropriate and necessary for the Court to authorize the dissolution of the Debtors. The Debtors have no further business to conduct and no other purpose in remaining active as corporate entities in their respective jurisdictions. The Debtors may incur additional taxes and statutory fees owing to their continued corporate existence absent their prompt dissolution.  Accordingly, it is in the best interests of the Debtors' estates for the Debtors to dissolve as soon as practicable following entry of the final dismissal order.

40.    **Third**, the dismissal of a chapter 11 case ordinarily vacates all orders previously entered by the bankruptcy court and restores all parties to the prepetition status quo. See 11 U.S.C. § 349(b).  A bankruptcy court may, however, "for cause, order[] otherwise . . . ." *Id*.  In these cases, several key orders should remain in full effect following the dismissal, including the Final DIP Order, the Sale Order, the GBG Opinion and Order and the Allocation Opinion and Order.  These are the key orders in these cases that permitted the cases to proceed and move to resolution through

this dismissal.  As it relates to the Allocation Opinion and Order, that order must remain in full effect for the Allocation Appeal to continue unaffected.

41.   **Fourth**, as soon as reasonably practicable following the filing of a final monthly operating report and the payment of U.S. Trustee fees, the Debtors request that the Court dismiss the Chapter 11 Cases upon the filing of a certification of counsel (the "**Certification**") requesting entry of a dismissal order substantially in the form attached as Exhibit 2 to the Settlement Agreement.  Among other things, the Certification will verify that (i) all quarterly fees of the U.S. Trustee have been paid in full and (ii) the final monthly operating report has been filed.  The final dismissal order will dismiss the chapter 11 cases immediately upon entry.

## NOTICE

42.   Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel: (i) the Office of the U.S. Trustee; (ii) Polk; (iii) THL; and (iv) those parties requesting notice pursuant to Rule 2002.  In light of the nature of the relief requested in this Motion, the Debtors respectfully submit that no further notice is necessary.

## CONCLUSION

WHEREFORE, for the reasons set forth above, the Debtors respectfully request that this

Court enter the Settlement Approval Order, substantially in the form attached hereto as Exhibit B,

approving the Settlement Agreement, and grant such other and further relief as the Court deems

just and proper.

Dated: October 7, 2019
      Wilmington, Delaware

                     BAYARD, P.A.

                     */s/ Erin R. Fay*
                     Scott D. Cousins (No. 3079)
                     Erin R. Fay (No. 5268)
                     600 N. King Street, Suite 400
                     Wilmington, Delaware  19801
                     Phone: (302) 655-5000
                     Email: scousins@bayardlaw.com
                             efay@bayardlaw.com

                     -and-

                     ROPES & GRAY LLP
                     Gregg M. Galardi
                     1211 Avenue of the Americas
                     New York, NY 10036-8704
                     Telephone:  (212) 596-9000
                     Facsimile:    (212) 596-9090
                     gregg.galardi@ropesgray.com

                     *Co-Counsel for the Debtors and Debtors in Possession*